Lauren MAXWELL *v.* SOUTHSIDE SCHOOL
DISTRICT

80-312                                      618 S.W. 2d 148

Supreme Court of Arkansas
Opinion delivered June 8, 1981
and amended on denial of rehearing July 20, 1981

*Cearley, Gitchel, Mitchell & Bryant, P.A.,* for appellant.

*Carter & Woods*, for appellee.

GEORGE ROSE SMITH, Justice. The question here is whether the appellee school district substantially complied with state law in refusing to renew the contract of the appellant, Lauren Maxwell, as a music teacher for the school year 1980-81. We are unable to agree with the circuit court's conclusion that the district's termination of Mrs. Maxwell's contract was in substantial compliance with the law.

During the 1979-80 school year Mrs. Maxwell was still a probationary teacher, in her second year with the district. On March 19, 1980, the day before a scheduled meeting of the school board, the school principal hurriedly filled out a form recommending, not quite wholeheartedly, that Mrs. Maxwell be rehired. The next day, however, the school board met and voted not to renew Mrs. Maxwell's contract, apparently in response to complaints (not in the record) made by unidentified parents. On the same day the board sent Mrs. Maxwell a notice stating merely that the board had voted not to renew her contract. No reasons were given.

On April 9 Mrs. Maxwell requested a public hearing and asked for a specification of the charges and circumstances, with the names of witnesses. The school board responded with a brief generalized statement of three reasons, without details or names of witnesses. After a public hearing on April 24 the board took the matter under advisement. On May 3 it released a written opinion adhering to its original non-renewal decision. Mrs. Maxwell pursued the only remedy afforded by the statute, an appeal to the circuit court. Ark. Stat. Ann. § 80-1264.9 (Repl. 1980).

The district is right in its argument that Mrs. Maxwell has not shown a violation of the Teacher Fair Dismissal Act of 1979. §§ 80-1264 *et seq.* That act contemplates that the school superintendent will first recommend a teacher's non-renewal; but we have held that the school board can refuse to renew even though, as here, the superintendent recommends renewal. *Fullerton* v. *Southside Sch. Dist.*, 272 Ark. 288, 613 S.W. 2d 827 (1981). Moreover, although the act requires that a tenured teacher be given reasons for non-renewal, there is no similar requirement as to a probationary teacher. § 80-1264.3. No violation of the Dismissal Act is shown.

There is, however, another consideration. Ordinarily a school district cannot by the adoption of a tenure policy give a teacher a tenure beyond that authorized by law. *Nethercutt* v. *Pulaski County Spec. Sch. Dist.*, 251 Ark. 836, 475 S.W. 2d 517 (1972). The legislature, however, has specifically required school districts to adopt written personnel policies, which must be reviewed annually and be supplied to the teachers. §§ 80-1256 *et seq.* We do not imply that such policies have the force of law, since legislative power cannot be delegated, but we do agree with the view that as a matter of contract law and fair dealing even a non-tenured teacher may reasonably expect the district to comply substantially with its own declared policies. See *Burnaman* v. *Ray City Ind. Sch. Dist.*, 445 F. Supp. 927, 936 (S.D. Tex. 1978). In the present case Mrs. Maxwell had received a copy of the district's personnel policies.

The appellee's policies on dismissal and non-renewal contain this explicit language:

When the board of education receives evidence which it considers sufficient to dismiss or not renew the contract of a teacher, it shall notify the teacher in writing. Such notice shall: (a) advise the teacher of the cause or causes of his proposed dismissal in sufficient detail to fairly enable him to show any error which may exist; (b) advise him, that upon request in writing, the names and nature of the testimony of witnesses against him shall be furnished; (c) advise him, that upon

request in writing, he will be accorded a hearing at which he may be represented by legal counsel and introduce witnesses in his own defense.

Mrs. Maxwell, upon being notified of the board's action, requested a public hearing, a specification of the charges, and the names of witnesses. The board set a hearing date, but it gave no detailed information about the charges nor the names of any witnesses. At the ensuing hearing Mrs. Maxwell answered the vague charges against her, but no witness appeared to contradict her version of what seems to have happened — minor disciplinary incidents within the school. Ten days after the hearing the school board adhered to its non-renewal of Mrs. Maxwell's contract, but the record is completely silent about the evidence that led the board to reach its original decision on March 20.

Here the school board, at or before its March 20 meeting, unquestionably received evidence it considered sufficient to require that Mrs. Maxwell's contract not be renewed. The district's policies required that Mrs. Maxwell be given detailed notice of her proposed dismissal and an opportunity to present her defense *before* the board made its decision. The board, however, gave Mrs. Maxwell no notice whatever, acted upon evidence not even yet disclosed, and informed Mrs. Maxwell of her discharge.

The facts here are materially different from those in the *Fullerton* case, supra, even though the same school district and the same personnel policies were involved in both cases. In *Fullerton* the school board, after having decided to renew the teacher's contract, received patrons' complaints that led the board to notify the teacher that the board had decided to reconsider the renewal of his contract. Before any decision had been made the teacher asked for and was given a hearing, which at his request was a closed session. He was presented with copies of the complaining patrons' statements and had an opportunity to respond to them. It was not until a week later that the board decided not to renew the contract. We upheld the board's action, because we found substantial compliance with controlling principles.

In the case at bar there was not even colorable compliance with the district's personnel policies. The board's written policies embodied in basic fairness that is inherent in the requirements of notice and an opportunity to be heard, but both requirements were brushed aside. The board reversed proper procedure by making its decision first and then hearing the evidence. That action cannot be sustained. *Kruse* v. *Board of Directors of Lamoni Community*, 231 N.W. 2d 626 (Iowa, 1975); *In re Swink*, 200 Atl. 200 (Pa. Super., 1938). Moreover, it is a basic rule of fair play in administrative matters that all the evidence be in the record. *St. Paul Ins. Co.* v. *Touzin*, 267 Ark. 539, 592 S.W. 2d 447 (1980). It is impossible for the circuit court or for this court to review the board's action with no knowledge of what evidence led to its March 20 decision not to renew Mrs. Maxwell's contract.

In summary, although a school district has great latitude in fixing the exact scope of its personnel policies, Act 400 of 1975 not having specified the content of those policies, a district is not free simply to disregard its rules currently in force. That is what was done here. We must conclude that the non-renewal of Mrs. Maxwell's contract cannot be upheld.

The circuit court's judgment must be reversed, which entitles the appellant to recover back pay for one school year, subject to the district's right to offer proof in mitigation of damages. *Newton* v. *Calhoun County Sch. Dist.*, 232 Ark. 943, 341 S.W. 2d 30 (1960); *Barham* v. *Welch*, 478 F. Supp. 1246 (E.D. Ark. 1979). The cause is remanded to the circuit court for the determination of the amount of back pay to be awarded and of the appellant's right to reinstatement if that is sought.

Reversed and remanded, the mandate to issue immediately.