Leslie T. **ROGERS**, Appellant,

v.

Paul **MASEM**, Superintendent of Schools of the Little Rock, Arkansas, School District, and Members of the Board of Education of the Little Rock, Arkansas School District, Individually and in their Official Capacities, Appellees.

No. 84–2425.

United States Court of Appeals, Eighth Circuit.

Submitted April 12, 1985.

Decided Oct. 9, 1985.

---

John W. Walker, Little Rock, Ark., for appellant.

G. Ross Smith and Susan Lutton, Little Rock, Ark., for appellees.

Before ROSS and JOHN R. GIBSON, Circuit Judges, and COLLINSON,* Senior District Judge.

JOHN R. GIBSON, Circuit Judge.

Leslie T. Rogers, an assistant principal who was discharged in 1982 from the Little Rock school system, appeals the judgment of the district court denying his claims of discrimination and due process violations arising out of his discharge. In June 1982, shortly before his contract was to expire, Rogers received a notice of termination from Superintendent of Schools Ed Kelly. The district court found that Kelly intended the notice to be one of nonrenewal and, hence, that Rogers was not entitled to the statutory procedures that apply when a teacher is terminated in Arkansas. We hold that the notice was, in fact, one of termination and, accordingly, reverse and remand for determination of appropriate relief.

Dr. Leslie T. Rogers, a black man with more than twenty-five years of experience in education, was employed by the Little

---

\* The HONORABLE WILLIAM R. COLLINSON, Senior United States District Judge for the Eastern and Western Districts of Missouri, sitting by designation.

Rock School District in 1979 as an evaluation specialist. After two years in that position, he was reassigned to the position of assistant principal at Henderson Junior High School under the supervision of Principal Marjorie Hubbard. His year at Henderson was a stormy one. The district court found that:

Dr. Rogers' period of employment at Henderson can be described as one of continuing conflict. * * * Although many of Dr. Rogers' confrontations involved Marjorie Hubbard, he also experienced difficulty with a football coach, teachers who were called upon to work with him, the representative of the Classroom Teachers' Association, bus drivers and the supervisor of transportation for the district.

Dr. Rogers complains that he was the victim of unfair treatment by Mrs. Hubbard and others while at Henderson. He claims that his problems with Mrs. Hubbard stemmed from the fact that she was insensitive to black children and treated blacks and poor whites differently from whites who enjoyed economic advantages.

*   *   *   *   *   *

After hearing the witnesses and reviewing the exhibits, the court is convinced that Dr. Rogers was unable to resolve his differences of opinion with Mrs. Hubbard and others without an unpleasant encounter. On several occasions, he ended a meeting with a flurry of heated words or a threat to call his attorney. While the court does not doubt Dr. Rogers' sincerity about his concern for the treatment of blacks and the poor, self-righteousness is no excuse for the abusive behavior and disruptive attitude displayed by Dr. Rogers on many occasions.

*Rogers v. Masem,* No. LR–C–82–485, slip op. at 2–3 (E.D.Ark. Oct. 4, 1984).

In April, Rogers was removed from Henderson by Superintendent of Schools Paul Masem and reassigned to the personnel department. In June, Superintendent Ed Kelly, who had replaced Masem earlier that month, wrote Rogers telling him that he was recommending his "termination" because of:

1) Your refusal to comply with and carry out certain tasks and duties assigned to you by your supervisor.

2) Specific acts of insubordination, including telling youngsters not to do certain things they were told to do by Mrs. Hubbard.

3) Your refusal to support certain policies and procedures of the school district.

4) Your harassment and intimidation of fellow employees through threats of legal action and threats to use a tape recorder in the performance of your duties.

At trial, Masem testified that, in light of the list of reasons given as well as the fact that ordinarily notices of nonrenewal were sent in March or April of the school year, he would regard the letter as one of termination and not of nonrenewal. Kelly, however, testified that when he wrote the letter he "had not learned at that time to make a clear distinction" between the terms. The district court accepted Kelly's explanations, stating that

for whatever legal significance it might have, [the court] believes that Dr. Kelly intended the letter as notice of nonrenewal and not a discharge letter. In fact, Dr. Rogers was not 'terminated' in the sense that he was discharged; he was simply not offered another contract.

*Rogers,* slip op. at 6.

Kelly's letter to Rogers was dated June 15, 1982. Rogers's contract expired June 18, 1982. In a letter dated July 12, 1982, Rogers's attorney requested a hearing before the Board of Directors of the school district. On July 13, 1982, at a special meeting the Board considered Kelly's recommendation. There was testimony that Board members had received documentation prepared by the district reproducing and outlining some of the letters and memos that had been written about incidents involving Rogers at Henderson. Principal

Hubbard appeared before the Board and answered a few questions. Rogers was given no opportunity either to review the documentation or to appear before the Board. The Board voted not to renew Rogers's contract. After further action by Rogers's attorney, the school district offered Rogers an informal hearing on October 28, 1982. No formal presentation of evidence or cross-examination of witnesses was allowed, but Rogers did make his presentation under interrogation by his counsel. Following the hearing, the Board took no vote but simply allowed the earlier vote of nonrenewal to stand.

Rogers sued the Little Rock School District and its superintendent and school board members, claiming discrimination and violation of due process rights. In a bench trial, the district court, after determining that Rogers's "specific contentions about racial discrimination at Henderson [were] directed toward Mrs. Hubbard," found that

> [t]he only evidence of discrimination by Mrs. Hubbard is conclusory statements by Dr. Rogers. There is no credible or persuasive evidence that Mr. Greenway [a white assistant principal at Henderson] was given preferential treatment by Mrs. Hubbard; that Mrs. Hubbard treated Dr. Rogers unfairly; or that Mrs. Hubbard improperly or unfairly documented incidents involving Dr. Rogers. To the contrary, Dr. Rogers was furnished copies of documentation of the incidents and responded in writing to most of them.

Perhaps the allegation of discriminatory treatment which has a semblance of substance revolves around Mrs. Hubbard's handling of a complaint by Dr. Rogers regarding the treatment of black children by a black bus driver. Apparently a black bus driver made racially derogatory remarks to some of the black children who were passengers on her bus. Dr. Rogers was critical of Mrs. Hubbard for not taking corrective action. Mrs. Hubbard did, however, arrange a meeting between Dr. Rogers and the district's supervisor of transportation. Unfortunately, the meeting ended with an argument between Dr. Rogers and the supervisor.

*Rogers,* slip op. at 3–4. Thus, it concluded that the nonrenewal of Rogers's contract was not the product of racial discrimination since he "failed to demonstrate that he was treated differently from similarly situated whites or that any adverse decisions toward him were arbitrary, capricious or racially motivated."[1] *Id.* at 10.

As to the due process claim, the court first concluded that no liberty interest was implicated, since Superintendent Kelly's dismissal letter was not made public. It then concluded Rogers was not deprived of a property interest in continued employment since he was a probationary employee and thus not protected by Arkansas's fair dismissal act for teachers and since de facto policies and practices created no such right. It expressed doubts that the Principals' Roundtable Agreement, a document spelling out, inter alia, procedures for dismissal of principals and entitling them to a hearing, applied to Rogers but concluded that, in any event, Rogers's posttermination hearing before the school board in October 1982 gave him whatever process was due under that document. It also noted that Rogers's "only other source of entitlement would rest upon the 'Classroom Teacher's Association Agreement' and there was substantial, if not actual, compliance with the terms of that agreement." *Rogers,* slip op. at 12. Thus, finding no violations of due process, the court entered

---

**1.** In fact, concluded the court, Rogers had failed to make even a prima facie case, since "he did not prove he was qualified for the job as assistant principal." *Rogers,* slip op. at 9. The fact that he was replaced by a black male tended "to weaken any inference of racial discrimination."

*Id.* at 10. Further, any such inference was "dispelled because the defendants proved a legitimate nondiscriminatory reason for the employment decision, i.e., that the plaintiff was not equipped by temperament or attitude for the job of assistant principal." *Id.*

judgment for the school district, from which Rogers now appeals.[2]

## I.

■ We first turn to Rogers's claim on appeal that he was dismissed because he exercised his first amendment rights. He argues one of the reasons he was fired was because he spoke out about the treatment of black students at Henderson. He points, for example, to evidence that in a memo prepared by Principal Hubbard she referred to Rogers's "excessive references to due process during disciplinary conferences." At trial, however, Rogers presented this and other similar evidence in support of his discrimination claim. His amended complaint did not raise the issue, and it was not the subject of consideration by the district court in its opinion. Our general rule is that we do not consider issues not raised in the courts below. For example, in *Cato v. Collins,* 539 F.2d 656, 662 (8th Cir.1976), a case involving an Arkansas black teacher whose contract was not renewed, we did not consider the constitutional issues raised on appeal because of "[t]he failure of appellant to assert such contentions in the District Court." As Rogers in his brief advances no reason for his tardiness in raising the issue, we shall adhere to our general rule and not consider it further.

## II.

■ Rogers also argues on appeal that he established that the school district considered his race in deciding to fire him and that, at the very least, he established a prima facie case of discrimination. As the case was fully tried on its merits before the district court, the question for us is whether Rogers proved "the ultimate question of discrimination *vel non." United States Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 714, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983) (footnote omitted). In considering this question, we must give strong deference to the findings of

fact of the district court. As the Supreme Court made clear in *Anderson v. City of Bessemer City,* —— U.S. ——, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985), last term, the clearly erroneous standard by which we review findings

> does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently. * * * If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

*Id.* 105 S.Ct. at 1511–12 (citing *United States v. Yellow Cab Co.,* 338 U.S. 338, 342, 70 S.Ct. 177, 179, 94 L.Ed. 150 (1949); *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.,* 456 U.S. 844, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982) ). While we might have decided the case differently on this point, as there appears to be evidence of discrimination stemming from Rogers's defense of black children, we certainly cannot say there were not two permissible views of the evidence. Under *Anderson,* we cannot say that the district court clearly erred.

## III.

■ Finally, Rogers argues, as he did before the district court, that he was denied due process of law by the failure of the Little Rock School District to comply with Arkansas statutes, the provisions of the Principals' Roundtable Agreement, the provisions of the Classroom Teachers' Association Agreement, and the policies and practices of the school district. We turn first to his statutory claims.

As Rogers was a "teacher" as defined in the Teacher Fair Dismissal Act of 1979, Ark.Stat.Ann. §§ 80–1264–1264.10 (1980)

---

**2.** Rogers also alleged sex discrimination. The district court in its opinion simply stated that "[t]here is no evidence that Dr. Rogers was the

victim of discrimination because of his sex." *Rogers,* slip op. at 9. This finding is not appealed by Rogers.

(repealed), the statute in effect at the time of his dismissal, he was entitled to the protections of that statute. Two distinctions made in the act are crucial to his case. First, probationary teachers (those with less than three successive years of employment in the school district) are distinguished from nonprobationary teachers (those with more than three years of employment). Second, since all teachers receive contracts only for one school year at a time, nonrenewal of a contract for the next school year is distinguished from termination of a contract. Rogers was entitled to automatic renewal unless he received the notice of nonrenewal. Ark.Stat. Ann. §§ 80–1264.3 and 80–1304(b) (1980).

Since Rogers was in his third year of employment with the Little Rock School District he was a probationary teacher. As such, under section 80–1264.3, if his contract was not to be renewed, he was entitled to timely notice. If his contract was to be terminated, under section 80–1264.5 he was entitled to written notice containing "a statement of the grounds for * * * termination" and a statement "that a hearing before the board of directors is available * * * upon request." Unlike a nonprobationary teacher, he was not entitled to a hearing upon notice of nonrenewal. *Id.* § 80–1264.8.

Since another section of the fair dismissal act seemed to suggest that probationary teachers *did* have a right to a hearing upon nonrenewal,[3] the issue was litigated, and the Arkansas Supreme Court specifically ruled that "the legislative intent was to create a right to a hearing by probationary teachers for termination but *not* for renewal." *Allred v. Little Rock School District*, 274 Ark. 414, 418, 625 S.W.2d 487, 489 (1981); *see McElroy v..Jasper School District*, 273 Ark. 143, 147, 617 S.W.2d 356, 358 (1981). At the time of Rogers's dismis-

sal, then, it was quite clear that for probationary teachers the procedures attendant upon nonrenewal were separate and distinct from those attendant on termination.

As we have observed, the notice Rogers received from Superintendent Kelly stated that *termination* was being recommended. Further, the letter stated that its purpose was to provide Rogers "with the reasons for this recommendation [of termination] in accordance with Act 766 of 1979 [the fair dismissal act]." The Act required that a probationary teacher be given a statement of the grounds for termination but not for nonrenewal. Ark.Stat.Ann. § 80–1264.5; *see Nordin v. Hartman Public Schools*, 274 Ark. 402, 406, 625 S.W.2d 483, 485 (1981) (probationary teacher not entitled to statements of reasons for nonrenewal); *Maxwell v. Southside School District*, 273 Ark. 89, 91, 618 S.W.2d 148, 149 (1981) (same); *McElroy*, 273 Ark. at 147, 617 S.W.2d at 358 (same). Thus, the inclusion of the reasons, which were made, as Kelly testified, on the advice of legal counsel, further indicates that the letter was, in fact, one of termination.[4] Since the letter did not state that a hearing was available to Rogers, and Rogers did not receive the timely hearing mandated by section 80–1264.8, on the facial appearance of the letter, Rogers did not receive the process he was due under the statute.

The district court only peripherally treated the issue of whether the notice was one of termination or nonrenewal. Instead it found "Dr. Rogers was not 'terminated' in the sense that he was discharged; he was simply not offered another contract," *Rogers*, slip op. at 6, indicating that this factual finding as to what occurred subsequent to the notice resolved the due process issues. In addition, it found that it believed "Dr. Kelly *intended* the letter as notice of non-

---

3. Section 80–1264.9 referred to hearings for probationary teachers "with respect to the termination or nonrenewal of a teacher contract."

4. Further, the district court specifically determined that "[i]t has *never* been the policy or practice of the Little Rock School District to give probationary teachers (those in their first

three years of employment) a statement of reasons * * * before nonrenewal of a contract." *Rogers*, slip op. at 7 (emphasis added). Thus, the court's own factual findings suggest the letter of termination was exactly what the letter said it was.

renewal and not a discharge letter." *Id.* at 6 (emphasis added). We see no need to disturb this finding but also see no finding in the district court's opinion that the letter *was* one of nonrenewal. In its brief to this court the school board also focuses exclusively on the intent of Superintendent Kelly. It cites us to no statute or case law stating that the plain language of the notice may be ignored or rewritten by a court.

We believe that the clear language of the notice cannot be ignored. While it is true that Arkansas generally required only substantial compliance with the provisions of the fair dismissal act, *see, e.g., Maxwell v. Southside School District,* 273 Ark. at 91, 618 S.W.2d at 149, here not even substantial, much less actual, compliance was achieved.[5] The distinction between termination and nonrenewal for probationary teachers was abundantly clear in Arkansas law at the time of Rogers's dismissal. Superintendent Kelly testified that when he sent the letter of notice to Rogers not only did he have advice of counsel but also that in dealing with Rogers he wanted

> to make sure that we complied with all of the rules and regulations and the practices that we had to follow. So I asked the staff to make sure that we double checked, but I did not want to start off my employment—this was a very difficult time—in doing some things that were not legal. And I stressed the importance of making sure that we dealt with the issues as we were required to do so.

"When published rules and regulations establish a particular statutory procedure for the termination of a teacher's employment, * * * and they add to the constitutional minimum [of due process protection] then they must be followed." *Wells v. Dallas Independent School District,* 576 F.Supp. 497, 503 n. 13 (N.D.Tex.1983) (cit-

ing *Ferguson v. Thomas,* 430 F.2d 852, 856 (5th Cir.1970) ). Superintendent Kelly's intention to comply with the procedures of the fair dismissal act was not enough. Compliance was also needed. *See Burnaman v. Bay City Independent School District,* 445 F.Supp. 927, 937 (S.D.Tex.1978) (failure of superintendent to hold hearing for demoted teacher not excused by "mere innocent ignorance or misunderstanding"). As a matter of law, we believe that the notice of termination was, in fact, exactly that—and thus that Rogers was entitled to a timely hearing, which he did not receive. Although we also have serious doubts whether the procedures of the Principals' Roundtable Agreement and the Classroom Teachers' Association Agreement were complied with, in light of our holding we need not and do not reach these issues.

We reverse the judgment of the district court and remand for entry of judgment for Rogers and for calculation of damages and other appropriate relief in accordance with this opinion.

---

5. In *Fullerton v. Southside School District,* 272 Ark. 288, 291, 613 S.W.2d 827, 829 (1981), the court implied that where "prejudice * * * [could be] shown to have resulted from any want of strict compliance," substantial compliance would not be enough. *See Lee v. Big Flat* *Public Schools,* 280 Ark. 377, 378, 658 S.W.2d 389, 390 (1983). Rogers, unlike Fullerton, received no hearing until several months after his discharge. Thus, if the notice was a notice of termination, there *was* prejudice to his position.