Billy J. MURRAY *v.* ALTHEIMER-SHERRILL PUBLIC SCHOOLS

87-302                                    743 S.W.2d 789

Supreme Court of Arkansas
Opinion delivered February 1, 1988
[Rehearing denied February 29, 1988.*]

404

*Mitchell & Roachell*, by: *Paul J. Ward*, for appellant.

*Laser, Sharp & Mayes, P.A.*, by: *W. Paul Blume*, for appellee.

JACK HOLT, JR., Chief Justice. This appeal is from a judgment of the Jefferson County Circuit Court dismissing with prejudice appellant Billy J. Murray's appeal from a decision by the Altheimer-Sherrill School Board not to renew Murray's teaching contract for the 1986-87 school year. Murray argues that the board's decision to nonrenew failed to comply with the Teacher Fair Dismissal Act of 1983, Ark. Code Ann. §§ 6-17-1501—6-17-1510 (1987), and the school district's reduction in force policy. Because we agree that the board's action failed to comply with the district's reduction in force policy, we reverse and remand for proceedings consistent with this opinion.

Murray was employed in the Altheimer-Sherrill School District for five years in various capacities both at the middle school and at the high school. His duties included athletic director, coach, physical education teacher, and drivers education instructor. An examination of letters and memoranda from Murray's personnel file reveals that on several occasions during those five years Murray was informed that he needed to improve in such areas as gym maintenance, taking classes away from school grounds without authorization, tardiness, improper early dismissal of classes, and lack of class discipline. It was conveyed that failure to improve in these areas could result in disciplinary action.

On recommendation of the school superintendent, Fred Martin, Jr., the school board, without notice to Murray, voted on April 28, 1986, not to renew his teaching contract for the 1986-87 school year. Notice of superintendent Martin's recommendation of nonrenewal was sent to Murray on the following day and reads in part:

> Due to financial limitations, declining enrollment and program changes, with regret I am informing you that I am recommending the non-renewal of your contract for the 1986-87 school term.

> I am also informing you that you may file a written request with the school board of the district for a hearing

within 30 days after you receive this notice.

The hearing may be private unless you or the board shall request that the hearing be public. At the hearing, you may be represented by a person of your choice.

\* \* \*

Realizing that its April 28 vote of nonrenewal had taken place before notice and an opportunity to be heard had been afforded Murray, which is contrary to the Teacher Fair Dismissal Act and this court's opinion in *Green Forest Public Schools* v. *Herrington*, 287 Ark..43, 696 S.W.2d 714 (1985), the board met on May 9, 1986, and voted to rescind its April 28 vote of nonrenewal. Murray subsequently requested a public hearing on superintendent Martin's recommendation of nonrenewal, and on May 22 the board reconvened. At the conclusion of the hearing, the board again voted not to renew Murray's teaching contract. The circuit court upheld that decision.

■■ The determination not to renew a teacher's contract is a matter within the discretion of the school board, and the circuit court cannot substitute its opinion for that of the board in the absence of an abuse of discretion by the board. *Leola School District* v. *McMahan*, 289 Ark. 496, 712 S.W.2d 903 (1986); *Chapman* v. *Hamburg Public Schools*, 274 Ark. 391, 625 S.W.2d 477 (1981). Moreover, it is not this court's function to substitute our judgment for the circuit court's or the school board's. *Leola, supra; Moffitt* v. *Batesville School District*, 278 Ark. 77, 643 S.W.2d 557 (1982). We will reverse only if we find on review of the trial court's decision that the court's findings were clearly erroneous. Ark. R. Civ. P. 52; *Green Forest, supra.*

## I. *Notice and opportunity to be heard*

Murray first argues that notwithstanding the school board's formal rescission of the April 28 vote of nonrenewal, under our holding in *Green Forest* (decided under the Teacher Fair Dismissal Act of 1979, Ark. Stat. Ann. §§ 80-1264—80-1264.10 [Repl. 1980]) this case should be reversed because the board failed to provide proper notice and an opportunity to be heard. We disagree.

*Green Forest* involved a school board's vote of nonrenewal at

a hearing requested by the teacher after having received notice. We determined that the board's action did not constitute substantial compliance with the notice provisions of the Act in light of evidence that the board had already voted to nonrenew at a prior hearing of which the teacher had no knowledge. In the case before us, the school board argues that *Green Forest* is distinguishable in that the board formally rescinded all actions taken prior to the May 22 hearing.

Ark. Code Ann. § 6-17-1506(a) and (b) (1987) basically provide that every contract of employment made between a teacher and the board of directors of a school district shall be renewed in writing unless by May 1 of the contract year the teacher is notified in writing that the school superintendent is recommending nonrenewal. That notice must contain a simple but complete statement of the reasons for such recommendation.

Section 6-17-1509(a) provides that a teacher who receives notice of recommended nonrenewal may file a written request with the board of directors for a hearing. As to nonprobationary teachers, § 6-17-1510(b)(1) and (2) set out that upon conclusion of the hearing, the board may reject or modify the superintendent's recommendation or refuse to renew the contract for: (1) any cause which is not arbitrary, capricious, or discriminatory; or (2) violation of the reasonable rules and regulations promulgated by the board.

It is clear that the Act contemplates that notice and an opportunity to be heard be accorded before the board's decision on the superintendent's recommendation not to renew a nonprobationary teacher's contract. It therefore remains to determine whether the board's rescission of the April 28 vote constitutes substantial compliance which otherwise might be lacking under our holding in *Green Forest*.

The record discloses that the May 22 hearing opened with an admonition from the board president, Clyde Sites, that the only issue before the board was whether Murray's teaching contract should or should not be renewed for the reasons stated in superintendent Martin's recommendation and that only information pertinent to that issue would be allowed. Paul Blume, counsel on behalf of the school board, emphasized that the board had rescinded its April 28 vote, and he further cautioned the board,

"[You] should not vote based on any preconceived notions, indeed, if you have any, but should make your decision solely on what has been brought before you and will be brought before you during this hearing."

This "cautionary instruction" coupled with the board's formal rescission of its original vote cured any error resulting from the April 28 hearing. We presume that the board members are fair-minded and resolve matters presented to them on an impartial basis.

In light of the foregoing, we cannot say that on this issue the trial court's conclusions that the board had substantially complied with the notice and hearing provisions of the Act were clearly erroneous.

## II. *Failure to evaluate*

Murray next argues that the Altheimer-Sherrill School District violated the Teacher Fair Dismissal Act by failing to evaluate Murray in writing during the course of the 1985-86 school year. Subsections (a) and (c) of § 6-17-1504 provide:

> Each teacher employed by the board of directors of a school district must be evaluated in writing annually.
>
> * * *
>
> Whenever a superintendent or other school administrator charged with the supervision of a teacher believes or has reason to believe that a teacher is having difficulties or problems meeting the expectations of the district or its administration and the administrator believes or has reason to believe the problems could lead to termination or nonrenewal of contract, the administrator shall bring the problems and difficulties to the attention of the teacher involved in writing and shall document the efforts which have been undertaken to assist the teacher to correct whatever appears to be the cause for potential termination or nonrenewal.

Substantial compliance with the requirements of the Teacher Fair Dismissal Act is all that is required. *McElroy* v. *Jasper School District*, 273 Ark. 143, 617 S.W.2d 356 (1981); *Fullerton*

v. *Southside School District*, 272 Ark. 288, 613 S.W.2d 827 (1981).

Included in Murray's personnel file is a letter of formal counseling dated October 9, 1985, which discusses Murray's unauthorized early dismissal of classes, and a memo dated October 18, 1985, which discusses Murray's improper removal of classes from campus. Murray was subsequently notified in writing that he would be evaluated for the 1985-86 school year during third period on March 20, 1986. The evaluation form indicates that the principal was unable to perform the evaluation because Murray was nowhere to be found, either on the date specified or on the next day. Finally, a memo dated February 2, 1986, sets out that the high school principal conferenced with Murray as to the teacher's difficulties with class scheduling, class discipline, and absences from classes.

■ Although we rule that the trial court's finding of a substantial compliance with the Act on this issue is not clearly erroneous, we hasten to add that the evidence of record barely passes muster. The Act contemplates and fairness requires that superintendents and other school administrators should not only bring problems and difficulties to the attention of the teacher in writing but should also fully document the efforts undertaken to correct the problems.

### III. *Reduction in force policy*

Murray's final argument concerns the school district's failure to adhere to the provisions of its own reduction in force policy. In its notice to Murray concerning nonrenewal of his contract, the reasons given were: "financial limitations, declining enrollment and program changes." Those reasons are embodied in a reduction in force policy adopted by the school board in a previous school year. That policy contains a point system which determines the priority of layoffs when reductions in staff are necessary.

■ Section 6-17-201(a) of the Teacher Fair Dismissal Act provides that each school district shall have a set of written personnel policies. Section 6-17-204(a) provides that the personnel policies shall be incorporated as terms of teacher contracts and shall be binding upon the district and its teachers unless

changed by mutual consent. In *Maxwell* v. *Southside School District*, 273 Ark. 89, 618 S.W.2d 148 (1981), this court noted as to similar provisions contained in the prior Act:

> We do not imply that such policies have the force of law, since legislative power cannot be delegated, but we do agree with the view that as a matter of contract law and fair dealing even a non-tenured teacher may reasonably expect the district to comply substantially with its own declared policies.

The appellee's reduction in force policy provides that reductions "may be implemented in times of financial limitations, program changes, declining enrollment, closing of facilities or other serious business or legal reasons" and further specifies that upon a determination that a reduction in force is necessary:

> [t]he attempt shall first be made to reduce the staff by attrition and early retirement incentives. Secondly, the employees with temporary or emergency certification will be released. *Finally, a point system will be applied to all other personnel in the areas of (1) Seniority, (2) Educational level; and (3) Principal's and/or supervisor's recommendations. The point system will determine the order of employee layoff.* [Emphasis ours.]

The policy clearly provides that with the exception of attrition and early retirement, reduction or release of nonprobationary employees will be determined by the point system.

There is no dispute that as between Murray and the other coaches at the middle and high schools, Murray had accumulated the most points. However, it is the board's position that its policy allows the board to go beyond the point system and consider Murray's instructional deficiencies in determining whether to release Murray rather than someone with fewer points but better classroom performance. In support of that position, the board calls our attention to the following rather broad introductory language contained within the policy:

> The adoption of this policy is not intended to limit the power and authority of the district to fully determine when to release or reassign personnel.

To allow the board to circumvent application of the point system when determining the priority of layoffs as to nonprobationary teachers merely by alluding to the cited language would render meaningless the requirements of § 6-17-204(a) and the intent of our language in *Maxwell* that fair dealing and principles of contract law suggest that a teacher may reasonably expect the district to comply with its declared policy.

We emphasize that the reasons for nonrenewal listed in the notice [§ 6-17-1506(b) requires a "simple and complete statement of the reasons for nonrenewal"] clearly made reference to the reduction in force policy adopted by the district. As such, Murray was entitled to rely upon the declaration in the policy that the nonrenewal determination would be governed by application of the point system, which by definition took into account Murray's on-the-job performance.

Under the third category in the point system, "principal's or supervisor's evaluation," points are given for "classroom management, discipline, instructional skills, and overall education." Hence, all nonprobationary teachers are put on notice that when reductions in force are being recommended, evaluations of teacher skills and performance have a direct bearing on the order of employee layoff pursuant to the point system. In the areas listed, Murray scored less than either of the other coaches. However, in the categories of seniority and education level, Murray's combined scores were higher and resulted in the highest total number of points overall.

As is evidenced by statements made at the hearing, Murray was under the impression that in the event of a reduction in force due to "financial difficulties, program changes, and declining enrollment," as provided in the policy, he would be retained pursuant to the point system notwithstanding his failure to score well in the area of teacher performance. That interpretation is clearly justified when one considers the overall language of the personnel policy, and any other reading would ignore the obvious intent underlying adoption and structuring of the point system. Findings by the trial court to the contrary, or of substantial compliance, are clearly erroneous and require reversal.

For the foregoing reasons, the judgment is reversed and

412

remanded for a determination of the amount of back pay to be awarded and of Murray's right to reinstatement. *See Maxwell, supra.*

Reversed and remanded.