The Honorable Ted E. Mullenix State Representative 200 Rolling Acres Road Pearcy, AR 71946
Dear Representative Mullenix:
This is in response to your request for an opinion on the legality of freezing a school principal's salary under the following circumstances. You state:
 During the 1987-88 school year a principal at Lake Hamilton School District received disciplinary action from the School Board, through the appropriate chanels [sic] of evaluation, in addition his salary was frozen for the 1987-88 school year.
If the principal, as a result of the salary freeze, did not receive part of the earmarked funds under A.C.A.6-20-319 (the so-called "56% requirement"), it appears that there would be a resultant unequal distribution of any net revenue increase. This would, it seems be contrary to 6-20-319. If, however, there is an agreement in this district for an unequal distribution of these revenues, reference would then have to be made to such agreement to determine whether the salary freeze generates a conflict with 6-20-319.
If, as a result of the freeze, the principal was denied any incremental funds that he was otherwise entitled to receive under the salary schedule (A.C.A. 6-20-319), a potential basis exists for a conflict with the district's personnel policies. A conclusive determination in this regard would, of course, require consideration of the relevant personnel policies. As a general matter, however, this office has previously opined that teacher salary schedules and related school district personnel compensation plans and policies are encompassed within the meaning of "personnel policies." See Att'y Gen. Op. No. 84-167. That conclusion was reached in connection with Act 714 of 1971, as amended. [A.C.A. 6-17-201 to 203, 6-17-205, and 6-17-206 (1987).] Although these Code sections have since been repealed (Acts 1987, No. 687, 6), Section 6-17-201 (Supp. 1989) now states that "[e]ach school district in the state shall have a set of written personnel policies, including the teacher salary schedule." The "teacher salary schedule" may reasonably be construed to refer to the "salary schedule" required under A.C.A. 6-20-319. This Code section states in pertinent part that "[t]he district shall file with the State Board of Education annually a salary schedule for its certified employees which recognizes a minimum level of training and experience. This schedule shall reflect the actual pay practices of the district, including all fringe benefits." A.C.A. 6-20-319(4)(B) (Supp. 1989) (emphasis added.)
It is significant to note in this regard that the Arkansas Supreme Court has stated, with regard to personnel policies that:
 We do not imply that such policies have the force of law, since legislative power cannot be delegated, but we do agree with the view that as a matter of contract law and fair dealing even a non-tenured teacher may reasonably expect the district to comply substantially with its own declared policies. [Citation omitted.]
Maxwell v. Southside School Dist., 273 Ark. 89, 91,618 S.W.2d 148 (1981).
The Maxwell case was subsequently cited with approval in Murray v. Altheimer-Sherrill Pub. Schools, 294 Ark. 403,410, 743 S.W.2d 789 (1988), with regard to a school board's decision not to renew a teaching contract. This precept would, in my opinion, in all likelihood also be applied in connection with a principal's contract. Each teacher or administrator must be given a copy of the district's personnel policies in effect at the time of his or her employment. A.C.A. 6-17-209(a) (Supp. 1989). This requirement was in place prior to the passage of Act 687 of 1987 (A.C.A. 6-17-201 et seq. (Supp. 1989)), which substantially revised the Code sections pertaining to personnel policies. Under the 1987 act, each teacher or administrator who was employed before July 20, 1987 (the effective date of Act 687 of 1987) must be given a copy of the district's personnel policies at the time his or her contract is renewed or extended. A.C.A.6-17-206(b) (Supp. 1989).
If Act 687 of 1987 applies in connection with this particular principal's contract (as noted, the act went into effect July 20, 1987), there is also the possibility that personnel policies and salaries are negotiated under a written policy agreement. See A.C.A6-17-202 (Supp. 1989). Any such agreement would, of course, have to be referenced in that case.
It is thus apparent that the answer to your question may turn on several factors, including the nature of the funds withheld from the principal as a result of the salary freeze, as well as the applicable personnel policies, including the relevant salary schedule. The terms of this particular principal's contract would also have to be considered in making any conclusive determinations concerning the validity of a salary freeze. While a conclusive response to your question is not possible under these circumstances, we hope that the foregoing offers general guidance in addressing the issue.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.
Sincerely,
/s/ Ron Fields Attorney General
[1] Under this provision, 56% (80% of 70% = 56%) of each school district's increase in net current revenue, less the total salary expenditure required to fund additional certified personnel, must be divided equally among the certified positions unless a majority of teachers agree to a different distribution.