Marsha MOFFITT *v.* BATESVILLE SCHOOL
DISTRICT

82-177                                    643 S.W.2d 557

Supreme Court of Arkansas
Opinion delivered December 20, 1982

*Cearley, Mitchell & Roachell,* by: *Richard W. Roachell,*
for appellant.

*G. Ross Smith, P.A.,* for appellee.

DARRELL HICKMAN, Justice. This is an appeal by Marsha Moffitt, a teacher in the Batesville School District, from a decision of the Independence County Circuit Court upholding the school board's termination of her contract. The issue on appeal is whether the school board had any cause to dismiss her according to the Teacher Fair Dismissal Act of 1979. Ark. Stat. Ann. §§ 80-1264 through 80-1264.10 (Repl. 1980).

Mrs. Moffitt had been a teacher in the Batesville School District for twelve years when she was terminated. She was a nonprobationary teacher whose contract could only be terminated for "any cause which is not arbitrary, capricious or discriminatory, or for violating the reasonable rules and regulations promulgated by the school board." Ark. Stat. Ann. § 80-1264.9 (b). *Chapman* v. *Hamburg Public Schools,* 274 Ark. 391, 625 S.W.2d 477 (1981).

Mrs. Moffitt's contract was renewed in March of 1981. However, she was informed in writing by the principal on May 15, 1981, that because of problems she had had during the school year he would take a serious look at any future recommendation to rehire her. A few days later the principal decided that Mrs. Moffitt violated two rules of the school district. She had destroyed the final examinations of her students and she had failed to turn in on time a list of students who had lost or damaged their books.

After final examinations, several parents complained when they learned their children had received lower grades in Mrs. Moffitt's class. Then they found that the final examination papers had been thrown out and they could not find out why. Mrs. Moffitt claimed that she did not understand the rule to apply to spring semester finals because the students would not be back in class. Because of Mrs. Moffitt's actions it was necessary to reconstruct the grades of certain students. Those who had a higher grade before the final examination were given the benefit of the doubt and the higher grade. Those whose grades were raised

by the final examination were allowed to keep the final higher grade.

Regarding the books, a notice was sent to the teachers about their various duties during the last week of school, May 18th through May 21st. On the notice was the following sentence: "Don't forget to turn in the following on the day assigned if possible." Listed thereafter were various reports due and one of them was the report of damaged or lost books. The report of damaged books was due May 19th and evidently Mrs. Moffitt turned hers in on May 20th. It was the school's policy to retain the report cards of students who had lost or damaged texts until they reimbursed the school for the books. When Mrs. Moffitt turned her list in, the report cards had already been mailed and it was necessary for the secretary to mail out to all of the students' parents, some seventy in this instance, a notice of fines owed. According to the school secretary this cost the school district about $300.00. There was evidence that no teacher had ever turned in a list of seventy damaged or lost books and that rarely had the number exceeded five or six.

Consequently, the superintendent of schools informed Mrs Moffitt by letter that he would recommend to the school board that her contract for the next year be terminated. In that letter four reasons were given:

(1) Deficiencies in your job performance as evidenced by our 1980-81 evaluation form and failure to improve in these areas as evidenced by the numerous counseling forms that your principal and assistant principal have written up from their observations in your classroom and upon recommendations that they have made to you as to ways you might improve.

(2) The principal's final recommendation that unless improvement in your job performance was evidenced in the 1981-82 school year it would be doubtful that he could recommend re-employment.

(3) Violation of Policy IHA in that you destroyed semester test exams before students or parents had a chance to review them.

(4) Failure to follow the principal's directive in sending students who had lost or damaged books to the office for corrective action.

At Mrs. Moffitt's request a hearing was held before the school board. Documentary evidence was introduced reflecting the problems Mrs. Moffitt had during the school year. First, a counseling form dated September 25, 1980 indicating that Mrs. Moffitt was late to school every day was introduced. Her explanation was deemed satisfactory by the principal. Another counseling form signed in October by Charles E. Knox, the principal, noted a discipline problem with her students in class; he said they threw paper wads, showed disrespect toward other students giving reports, were loud and misused study time. On February 14, 1981, Danny Yeager, Jr., the vice-principal, observed her class and noted four matters of concern: Students had drinks in her class, were without text books, were talking, and were making casual remarks during class. Mrs. Moffitt's annual teacher evaluation form, dated February, 1981, showed four areas in which she needed improvement. They were: (1) evidences careful planning and organization; (2) demonstrates effective instructional procedures and creative teaching techniques; (3) handles behavior problems and disruptions efficiently and unobtrusively; (4) is punctual and regular in attendance. Finally, a counseling form dated May 21, 1981, was introduced indicating she violated the two school policies. Mrs. Moffitt testified to the board that she was not aware she was required to keep final examination papers and that she turned the list of books in on time. The school board voted unanimously to terminate Mrs. Moffitt and the matter was appealed to the Independence County Circuit Court. Additional testimony was offered and the appellant argued that the violated rules were vague or unreasonable, but even if they were not, Mrs. Moffitt was discharged for arbitrary and capricious reasons. The trial court found otherwise and we affirm his decision.

The school board had an adequate basis on which to terminate Mrs. Moffitt's contract. There is no doubt that she was on notice that the superintendent had recommended renewal of her contract with reservations, and just a few days

after that it was learned that she had disposed of the final test papers, causing considerable concern to some students and parents. The grades were adjusted to pacify some parents because there was no way to satisfactorily prove the grades were fair and correct.

The examination rule in question reads:

All examination papers will be returned in class to the students and the examination discussed within one week after the examination is given. Students missing any part or parts of the questions will be shown why their answers are incorrect. Teachers may let the students retain the examination or may take them up and keep them in their files. It is recommended that the papers be filed for ready reference to any future discussion.

A fair reading of the rule leads to the conclusion Mrs. Moffitt should not have disposed of the tests.

The violation of the administration's request to timely report lost or damaged books might, standing alone, seem trivial even though the secretary of the school testified it cost the district $300.00 to mail out notices to all the parents. But we do not have before us the question of an isolated instance of neglect of duty. Before us is the question of whether she was terminated for any cause which was not arbitrary, capricious or discriminatory, or for violating the reasonable rules and regulations of the school board. Other teachers testified that the rule about keeping examinations was clear to them and often reiterated by the administration. We find that neither of those school directives violated by Mrs. Moffitt is unreasonable or confusing.

It is argued the board's reasons were arbitrary in that the two main reasons for her discharge, the destruction of the examination papers and the late book list, were not "just cause" for discharging a nonprobationary teacher.

The depositions of all the school board members were taken and they were asked specifically why they discharged

Mrs. Moffitt. These depositions and other evidence were offered to the circuit court by both parties in what amounted to a retrial of the case. (Since neither party questioned this procedure, which may not have been the kind of review contemplated in the Teacher Fair Dismissal Act, we do not rule on its propriety.) The board members generally said they were aware of Mrs. Moffitt's problems during the year when they decided to renew her contract, and she was terminated *mainly* for the two infractions. One member said she did so for the reasons contained in the superintendent's letter of June 19, 1981. Another said he only considered the two infractions of the rule. Regardless, the question to the trial court was whether the school board terminated Mrs. Moffitt for a reason permitted by the Teacher Fair Dismissal Act. The judge found the board did have cause and our review is limited to deciding if the circuit court was clearly wrong. ARCP, Rule 52. It is not our function to substitute our judgment for the circuit court's or the school board's. *Williams* v. *Marianna School District*, 274 Ark. 539, 626 S.W.2d 361 (1982). We find no error.

Affirmed.