## Hazel LEE *v.* BIG FLAT PUBLIC SCHOOLS

83-56                                        658 S.W.2d 389

Supreme Court of Arkansas
Opinion delivered October 17, 1983

*Cearley, Mitchell & Roachell,* by: *Richard W. Roachell,* for appellant.

*Poynter, Huckaba & Gearhart, P.A.,* by: *Frank H. Huckaba;* and *Mark F. Cooper,* for appellee.

GEORGE ROSE SMITH, Justice. The appellant, Hazel Lee, is a nonprobationary school teacher. This dispute is about the Big Flat School District's nonrenewal of Mrs. Lee's teaching contract for the 1982-83 school year. At her request the school board held a public hearing in July, 1982, and adhered to its earlier decision not to renew her contract. Contending that she had not been given the required written notice of nonrenewal, Ark. Stat. Ann. § 80-1264.3 (Repl. 1980), Mrs. Lee appealed to the circuit court, where testimony was taken. The circuit judge, affirming the board, rejected the argument that the board's action was arbitrary and capricious, which would be true only if the board's decision is not supportable on any rational basis. *Lamar Sch. Dist. No. 39* v. *Kinder,* 278 Ark. 1, 642 S.W.2d 885 (1982). We must affirm the trial court's decision if not clearly erroneous. ARCP Rule 52.

The statute requires that notice of the school superintendent's recommendation of nonrenewal be given by registered or certified mail during the period of the existing teaching contract or within ten days after the end of the school year. Section 80-1264.3. Substantial compliance with the notice requirement is sufficient, absent a showing that prejudice resulted from a want of strict compliance. *Fullerton* v. *Southside Sch. Dist.,* 272 Ark. 288, 613 S.W.2d 827 (1981).

Before the termination of her contract Mrs. Lee had been teaching remedial reading, a program partly supported by federal funds. On April 6, 1981, the superintendent wrote to Mrs. Lee, explaining that because of cuts in federal funds the school board, after long deliberation and after having hired Mrs. Lee for the 1981-82 year, had voted not to have a remedial reading program in the 1982-83 school year. The implication of the letter was that Mrs. Lee would not have a job for the 1982-83 year, but the letter did not specifically so state.

Nevertheless, Mrs. Lee apparently so understood the letter. During the winter of 1981-82 she applied to four other school districts for a job, sending the applications by registered mail. The school superintendent testified in substance that during the 1981-82 year he had numerous discussions with Mrs. Lee, all centering on the fact that she knew she would not be re-employed by the district.

Next, a written policy of the district provides that teachers will be considered for renewal at the February board meeting each year, options will be presented to the teachers after that meeting, an option will not be offered unless the board fully intends to hire that teacher, and teachers will be hired at the March meeting. Mrs. Lee admits that she was familiar with that regulation. She certainly knew that she had not been offered an option to renew her contract in February and had not been hired at the March meeting, 1982. In this connection the testimony of the school board president about another possible opening for Mrs. Lee is pertinent:

> Well, I don't know how you could work in a small system as we have and not become aware of what is going on, I don't understand that. We have only ten or twelve teachers in the system, and how information could get by without her knowing it is beyond me.

Finally, at Mrs. Lee's request the superintendent gave her this letter which could hardly have been more explicit:

April 5, 1982.

To Whom It May Concern:

Hazel Lee has been employed by the Big Flat School District #32 for a period of eleven (11) years. During most of this time she has taught Title I Reading to the students who were below grade level.

Mrs. Lee would have been re-employed by the Big Flat School District if federal funds would have permitted.

I would recommend Mrs. Lee for a position in elementary school and federal programs where students are placed.

Donald G. Lee, Superintendent.

That communication was in writing, was signed by the school superintendent, and was within the time fixed by the statute.

To sum up, the issue before both the triers of fact — the school board and the circuit court — was whether there had been substantial compliance with the requirement that notice of nonrenewal be timely given to Mrs. Lee. On the one side, the trial court's decision is supported by these facts: (1) The April 1981 letter, telling her that no teacher would be employed in the remedial reading program in the 1982-83 school year; (2) Mrs. Lee's recognition of that fact by applying to other districts for a 1982-83 job; (3) the school board's failure to offer her an option in February 1982 or a contract in March; (4) her apparent knowledge that other teachers had been employed for 1982-83, leaving no position for her to fill in that year; and (5) her solicitation and receipt of the To Whom It May Concern letter, reciting that she had not been re-employed. On the other side, there is only Mrs. Lee's assertion that the board's written decision on July 28 was "the first time that I had received the message that . . . I would not be employed." With the proof so strongly supporting the decision of the circuit court, and with the issue of credibility resting with that court, not with us, we

have no basis for holding that its decision is clearly erroneous.

There is also a second argument for reversal. Although counsel for the appellant concede that the school district had the right to discontinue the remedial reading program, it is argued that the school board acted arbitrarily and capriciously in not offering the position of science teacher to Mrs. Lee, who was qualified in that field. The school board's president testified that the science position had been filled by a teacher who was also an instructor in physical education. "We got both jobs at the price of one." He also testified that it is the practice for the teachers to make the application, not for the board to solicit, and Mrs. Lee made no request for the job. There is no indication that Mrs. Lee sought the science position until after the other teacher had been employed, presumably in March, 1982. Finally, Mrs. Lee's appeal to the circuit court was from the school board's decision not to renew her contract. Ark. Stat. Ann. § 80-1264.9. In the matter of running the schools the courts cannot interfere with a school board in the exercise of its discretion unless the complainant sustains the burden of showing by clear and convincing evidence an abuse of discretion. *Safferstone v. Tucker*, 235 Ark. 70, 357 S.W.2d 3 (1962). No basis for relief is established by this second contention.

Affirmed.

ADKISSON, C.J., and HICKMAN and HAYS, JJ., dissent.

STEELE HAYS, Justice, dissenting. Mrs. Lee alleges that notice by the school board was insufficient and that her dismissal was arbitrary and capricious, contrary to the requirements prescribed by Arkansas law. See Ark. Stat. Ann. § 80-1264.3, § 80-1304 (b) and § 80-1264.4 (Repl. 1980). She also contends the district failed to notify her of an opening for a science teacher for 1981-82 and in hiring the son of a board member (a substitute teacher who was not certified in science) was arbitrary and capricious, inasmuch as she was certified and had taught science for several years. I agree with the majority on the second issue, but cannot agree that the district was in substantial compliance with respect

to the nonrenewal of her contract and on that ground, I would reverse.

I recognize that there is evidence supporting the conclusion that Mrs. Lee doubted she was going to be rehired for the 1982-83 school year, as the trial court found. Ordinarily, that would end the matter. But there are, I believe, convincing reasons to reverse that decision as clearly erroneous.

Mrs. Lee had taught science and remedial reading in the Big Flat schools for eleven years and was under contract for the 1981-82 school year as a remedial reading teacher, her position being funded by Federal Title I funds. On April 6, 1981, she received a letter from the superintendent informing her that due to cuts in federal funds the school board had voted not to have a Title I remedial reading program for the 1982-83 school year.

The letter to Mrs. Lee did not comply with Ark. Stat. Ann. § 80-1264.3, which reads in part:

> Every contract . . . shall be renewed . . . unless on or by the time provided in subsection (b) of Section 4 of Act 319 of 1941 [Ark. Stat. Ann. § 80-1304 (b) (Repl. 1980)], as amended, the teacher is notified by the school superintendent that the superintendent is recommending that the teacher's contract not be renewed . . . A notice of nonrenewal shall be mailed by registered or certified mail to the teacher . . .

The letter was not sent by either registered or certified mail, as is clearly required. More importantly, it utterly failed to state in plain terms or even, I think, to imply, that her employment with the district was being terminated. The letter mentioned neither her contract nor nonrenewal — it simply stated that because of reduction in federal funds no teacher in remedial reading would be employed for the 1982-83 school year.

The district maintains the letter is in substantial compliance with § 80-1264.3, or its almost identical counterpart, § 80-1304.6. I would reject that contention, as the

letter fails to comply even marginally with our statutes. In previous cases we have given school boards the benefit of a lesser standard, i.e. substantial compliance, rather than strict compliance, with the statute. In *Fullerton* v. *Southside School District,* 272 Ark. 288, 613 S.W.2d 598 (1981), where the required notice was sent by the *district,* rather than the school *superintendent,* this court found substantial compliance, even though the act specified that the superintendent send the notice. Also, in *Allred* v. *Little Rock School District,* 274 Ark. 414, 624 S.W.2d 487 (1981) we found substantial compliance where the letter told the teacher his performance was unsatisfactory and "Therefore, . . . you will not be presented to the Board of Directors at the May 29 board meeting for reelection for the 1980-81 school year." But there are differences. In *Fullerton,* the letter itself fully complied with the law and in *Allred,* while the letter failed to track the precise language of the statute, it was abundantly clear from the wording used that the teacher's contract to teach was not being renewed. Hence, neither this court nor the trial court had any difficulty finding substantial compliance. But there are limits, and a willingness to find substantial compliance in those cases should not lead us to find it where it cannot be rationally inferred.

Mrs. Lee had taught in the school system for a good many years and in several positions other than remedial reading. Although she was told the remedial reading program was being discontinued, that by no means informed her that she was not to be rehired in *any* capacity. The most that can be said of the letter is that it left her uncertain as to her future. She testified that though she had had conversations with the superintendent about her position, she was never told that her contract would not be renewed and she was under the impression that the matter was not settled. In fact, she said the superintendent had expressed the possibility of her staying on if there were a way to "refigure the money." I concede these differences address themselves to the trial court, but I do not find a direct denial of her assertions in the testimony of the superintendent, and the letter itself provides documentary support for Mrs. Lee's position: it never mentions nonrenewal and was sent by ordinary mail.

It is precisely to avoid these misunderstandings that the current requirements for nonrenewal were enacted. The uncertainties that arise from inadequate notice are illustrated by this case. The reasons for these requirements have been stated:

> One obvious purpose of the statute requiring written notice was elimination of uncertainty and possible controversy regarding the future status of a teacher and a school. *Newton* v. *Calhoun County School District*, 232 Ark. 943, 341 S.W.2d 30 (1960).

Although the evidence makes it plain that Mrs. Lee knew her employment for the following year was in doubt, still, it is not so certain that her long tenure with the district was terminated as to warrant the district's *substantial noncompliance* with the law. It is to prevent the very problems this case typifies that prompted the adoption of § 80-1264.3, requiring the simplest sort of act by the district. And where the district neglects to follow the statute in substantial fashion, the reasonable consequences of its failure must fall upon the district rather than the teacher. The legislature in unambiguous language placed the burden on the school district to unequivocally notify a school teacher of termination. The majority has essentially rewritten the law to place a burden on the teacher to conclude he has been fired.

The act itself hardly burdens the district, it simply requires a timely written notice to the teacher by certified mail that his or her contract is not renewed. And we have lightened that task even further by the holdings cited earlier, that strict compliance is not required, so long as compliance is substantial. As I can find no substantial compliance, I would reverse.

ADKISSON, C.J., and HICKMAN, J., join in this dissent.