# LEOLA SCHOOL DISTRICT *v.* Lucille McMAHAN

86-14                                                712 S.W.2d 903

Supreme Court of Arkansas
Opinion delivered July 21, 1986
[Rehearing denied September 15, 1986.]

*G. Ross Smith & Associates, P.A.*, by: *W. Paul Blume*, for appellant.

*Cearley, Mitchell & Roachell*, by: *Marcia Barnes*, for appellee.

JACK HOLT, JR., Chief Justice. The appellee, Lucille McMahan, was a nonprobationary teacher who had been employed by appellant, Leola School District, for eleven years. During the 1981-82 school year, Mrs. McMahan was the subject of complaints from some parents concerning her alleged mistreatment of children in her classes. After proper notification and a hearing, the school board voted three-to-two not to renew Mrs. McMahan's contract. Mrs. McMahan appealed to the Grant County Circuit Court where the trial court reversed the decision of the Leola School Board, finding that the board failed to substantially comply with the Arkansas Teacher Fair Dismissal Act by voting to nonrenew Mrs. McMahan for arbitrary, capricious and discriminatory reasons. The school board brings this appeal from that order. We affirm the trial court. Our jurisdiction is pursuant to Sup. Ct. R. 29(1)(c) as we are being asked to interpret the Teacher Fair Dismissal Act of 1979,[1] Ark. Stat. Ann. §§ 80-1264—80-1264.10 (Repl. 1980).

The determination not to renew a teacher's contract

---

[1] This act was repealed, effective July 4, 1983, by the Teacher Fair Dismissal Act of 1983, Ark. Stat. Ann. §§ 80-1266—80-1266.09, 80-1266.11 (Supp. 1985). However, the 1979 Act controlled at the time the board made its decision.

is a matter within the discretion of the school board, and the reviewing court cannot substitute its opinion for that of the board in the absence of an abuse of discretion by the board. *Safferstone* v. *Tucker*, 235 Ark. 70, 357 S.W.2d 3 (1962); *Chapman* v. *Hamburg Public Schools*, 274 Ark. 391, 625 S.W.2d 477 (1981). In our judicial review of the trial court's decision, we affirm unless the court's findings were clearly erroneous. Ark. R. Civ. P. Rule 52; *Moffitt* v. *Batesville School Dist.*, 278 Ark. 77, 643 S.W.2d 557 (1982); *Chapman, supra.* It is not our function to substitute our judgment for the circuit court's or the school board's. *Moffitt, supra; Green Forest Public Schools* v. *Herrington*, 287 Ark. 43, 696 S.W.2d 714 (1985).

Arkansas Stat. Ann. § 80-1264.9 (Repl. 1980) provided:

(b) Any certified teacher who has been employed continuously by the school district [for] three (3) or more years may be terminated or the board may refuse to renew the contract of such teacher for any cause which is not arbitrary, capricious, or discriminatory, or for violating the reasonable rules and regulations promulgated by the school board.

The question before the trial court was whether the Leola School Board refused to renew the appellee's contract for reasons permitted by the Teacher Fair Dismissal Act. *Moffitt, supra.* A school board's action in this regard is arbitrary and capricious only if the board's decision is not supportable on any rational basis. *Lee* v. *Big Flat Public Schools*, 280 Ark. 377, 658 S.W.2d 389 (1983); *Lamar School Dist. No. 39* v. *Kinder*, 278 Ark. 1, 642 S.W.2d 885 (1982).

The facts leading up to the board's nonrenewal of Mrs. McMahan's contract were as follows. The superintendent of the school district received some complaints from parents about Mrs. McMahan on December 13, 1981. Mrs. McMahan was not informed of these complaints at that time. On December 16, an evaluation was made of Mrs. McMahan and all of the other teachers. Mrs. McMahan was rated "satisfactory" on fifteen items, "needs improvement" on four items and "unsatisfactory" on one item. Mrs. McMahan was rated unsatisfactory in the area of rapport with parents and students. A conference was held January 4, 1982, at which time Mrs. McMahan was told by the

superintendent of three complaints against her. The complaints were excessive harassment of students, remarks to students and parents asking if there were problems at home, and remarks to parents that if a student colors in black, the student has a problem. The superintendent recommended that Mrs. McMahan use tactics besides badgering students and that she refrain completely from the other activities. Mrs. McMahan submitted a report asking for further information about what she did that was considered harassment, denying that she asked her students about problems at home, and offering to quit making any comments to parents about the significance of coloring in black.

A second conference was held January 18 and the same three complaints were discussed. The superintendent wrote in his report of the conference that no positive plan for resolution of the problem had been submitted by the teacher since the first conference. Mrs. McMahan replied in writing, stating that she disagreed with the report but was willing to work with the superintendent and the board to solve the problem. She noted that she asked at both conferences for a written statement of what kind of harassment was stated in the complaints, but she has not received an explanation. Mrs. McMahan then responded to the complaints, stating that she has been as gentle as possible since the first conference so as not to harass her students, she does not question her students or talk to their parents about their home life, and she has not mentioned coloring in black again.

A third conference was held January 21 with Mrs. McMahan, the superintendent, and Mrs. Beverly Williams, the main complaining parent. There is no written record of what took place at this conference.

On February 3 the superintendent verbally informed Mrs. McMahan that there was no need for further conferences and he was leaning heavily towards recommending renewal of her contract. On February 18 the superintendent wrote a note to Mrs. McMahan, which was delivered February 22, telling her no further conferences were needed and a recommendation of renewal would be presented to the school board at the April board meeting.

On March 22, Mrs. Williams complained about an incident when she came to the school to have a conference with Mrs.

McMahan over a discipline sheet. Another teacher, Mrs. Dennis, was included in the conference as a witness at the request of Mrs. McMahan. Mrs. Dennis actively participated in the conference and, as a result, Mrs. Dennis's actions were the focus of Mrs. Williams's complaint. The superintendent had a conference March 25 with Mrs. Dennis, Mrs. McMahan, and Mrs. Williams. The superintendent stated Mrs. McMahan interfered with the conference and was insubordinate and so he asked her and Mrs. Williams to step out into the hall so he could talk to Mrs. Dennis alone. After they left the room, Mrs. Williams called him and he went outside to find Mrs. McMahan lying on the floor, yelling and in apparent pain. Mrs. McMahan later explained that she fainted and that the stress had given her back spasms.

Despite the March incidents, at the April 8 school board meeting the superintendent recommended Mrs. McMahan's renewal. The board did not take any action on her contract and instead asked the superintendent for more information on the March 25 conference before a decision would be made. Thereafter, the superintendent stated that he studied his information "based upon what I had recognized at the Board meeting", then withdrew his recommendation. Mrs. McMahan was properly advised that he now planned to recommend nonrenewal of her contract because of "a recurrence of the type of problem for which you have been repeatedly counseled this year, as well as in previous years." Mrs. McMahan requested a hearing before the school board on the superintendent's change of recommendation and such a hearing was held on May 18. After hearing testimony from the superintendent, Mrs. Williams, Mrs. McMahan, and witnesses for Mrs. McMahan, the school board held an executive session and voted three to two to accept the superintendent's recommendation of nonrenewal.

In finding that the school board abused its discretion, the trial court in an amended order made several findings of fact, including the following: that at the April 8 board meeting, a letter of complaint against Mrs. McMahan was read and Mrs. McMahan was not allowed to respond, even though in January she made a written request to be allowed to respond to complaints; that at its May meeting, the board denied Mrs. McMahan and her supporters the right to address the board, yet allowed complaining parties to address the board; that documents and

testimony were introduced at the May 18 hearing of which Mrs. McMahan had no prior notice although she had requested this information pursuant to the Teacher Fair Dismissal Act; and that "[t]he basis of the Board's vote to nonrenew Plaintiff in 1982 was an incident that occurred in 1976 for which Plaintiff had been cleared. Two of the Board members who voted to nonrenew Plaintiff were the only two complaining parents in 1976."

The trial court held that these actions all violate the Teacher Fair Dismissal Act in that they constitute arbitrary, capricious and discriminatory reasons to nonrenew Mrs. McMahan's teaching contract.

The appellant first objects to the weight placed by the trial court on the fact that the superintendent originally recommended renewal and then, when asked by the board to provide more information, recommended nonrenewal. The appellant claims that the recommendation of the superintendent was not binding on the board and this reliance is accordingly misplaced.

Although it is true that the board was not bound to follow the superintendent's recommendation, that recommendation was used by the board as the format for the nonrenewal hearing. One of the board members stated at the outset that the procedure for the hearing would be that the superintendent would first state his recommendation and fully explain his reasons, then any other persons would testify "offering evidence in support of his recommendation." Mrs. McMahan would then be permitted to respond with her own statement and with the testimony of others. Then, "[a]fter the conclusion of all the witness' statements, the Board will consider the evidence presented and act on the recommendation." It is clear from the record that the recommendation was relied upon by the board members as they considered Mrs. McMahan's contract.

The appellant also objects to the findings by the trial court that Mrs. McMahan was not allowed to address the board and respond to complaints at one of the board meetings and that documents and testimony were introduced at the hearing of which Mrs. McMahan had no prior notice. Appellant maintains these findings were both factually incorrect and that neither the opportunity to so address the board nor notice of documents and testimony is required by the Teacher Fair Dismissal Act.

We cannot say the trial court was clearly erroneous in finding that Mrs. McMahan was not allowed to address the board at its May meeting, although she was allowed to testify at the May hearing. It is more difficult to ascertain whether certain documents and testimony were introduced at the hearing of which Mrs. McMahan had no prior notice. Regardless, we do not reverse a trial court if its judgment is correct for any reason, *Miller* v. *Dyer*, 243 Ark. 981, 423 S.W.2d 275 (1968). The Teacher Fair Dismissal Act does require a school administrator to bring to a teacher's attention in writing any problems that may lead to the teacher's dismissal, Ark. Stat. Ann. § 80-1264.6 (Repl. 1980), and to maintain a personnel file which is available for the teacher's inspection. § 80-1264.7. The latter statute includes a requirement that the teacher be allowed to submit for inclusion in the file any written information in response to any of the matter contained in the file. Clearly then it was intended by the Legislature that the teacher be apprised of any problems and permitted to respond. The lack of both prompt notice to Mrs. McMahan and the opportunity to respond immediately to allegations against her, prevented Mrs. McMahan from taking further action to satisfy the complaints against her. To thwart Mrs. McMahan's efforts to respond and remedy the complaints, and then base her dismissal on these same complaints, supports the trial court's finding that the board relied upon arbitrary and capricious reasons for nonrenewal.

Similarly, there was conflicting testimony as to whether the 1976 complaints formed the basis of the board's decision and whether Mrs. McMahan was "cleared" of those complaints. Since there was testimony that supports the trial judge's findings on this issue, we cannot say he was clearly wrong.

The record reveals that the same three complaints were used against Mrs. McMahan at each of her conferences and, ultimately, were used to nonrenew her contract. Yet, Mrs. McMahan apparently corrected the documented deficiencies insofar as she was able to with the explanation of those deficiencies that was afforded her.

The school board's nonrenewal of Mrs. McMahan's contract, based on the foregoing, constituted an abuse of discretion. In so holding, the trial judge did not impermissibly substitute his

judgment for that of the board, but rather acted within the scope of judicial review of school board actions. We affirm his order.

As a second issue, the appellant objects to the trial court's decision to reinstate Mrs. McMahan and to award her backpay for the years between her nonrenewal and her reinstatement. Appellant maintains that the Teacher Fair Dismissal Act does not mandate reinstatement as a remedy and that the award of backpay for a period exceeding one year violates this court's holding in *Marion County Rural School Dist. No. 1 v. Rastle*, 265 Ark. 33, 576 S.W.2d 502 (1979) and Ark. Stat. Ann. § 80-1264.2 (Repl. 1980).

We answered appellant's argument as to backpay in the recent case of *Western Grove School Dist. v. Strain*, 288 Ark. 507, 707 S.W.2d 306 (1986), where we held that by statute, a teacher's contract with the school district continues unless nonrenewed for cause. We stated:

> Once [the teacher] . . . was removed from her job by the school district without cause, her contract was in abeyance during the pendency of the lawsuit. Since the lawsuit resulted in her reinstatement, [the teacher] . . . is entitled to be compensated for the period she was unemployed due to the actions of the school district.

The award of backpay was thus correct.

As to the reinstatement of Mrs. McMahan, the appellant maintains that a court should not grant reinstatement unless the return of the given teacher to á school's environment will not cause unnecessary disruption because of ensuing hard feelings. The appellant has cited no authority for this proposition. Any time a school board is forced to reinstate a teacher it has dismissed, hard feelings may be the result. To refuse reinstatement on that basis would allow the board to succeed in its arbitrary action. Reinstatement was an appropriate remedy.

Affirmed.

HAYS and HICKMAN, JJ., dissent.

STEELE HAYS, Justice, dissenting. By this opinion the court has, I believe, assumed the role of deciding whether a teacher's

contract should or should not have been renewed. However, that responsibility under the law belongs neither to this court nor to the circuit court, but to the Leola School District. *Kirtly* v. *Dardanelle Public Schools*, 288 Ark. 86, 702 S.W.2d 25 (1986).

In *White* v. *Jenkins*, 213 Ark. 119, 209 S.W.2d 457 (1948), we said:

> It is well settled that courts may not intervene to control matters in the discretion of administrative bodies such as school boards, in the absence of a showing of an abuse of such discretion. Necessarily, some latitude in the exercise of this discretion must be given to these boards. They represent the people of the locality affected and naturally are closer to the problems to be solved than any court or other agency could be.

And in *Safferstone* v. *Tucker*, 235 Ark. 70, 357 S.W.2d 3 (1962):

> The law involved appears to be well settled. In this State a broad discretion is vested in the board of directors of each school district in the matter of directing the operation of the schools and a chancery court has no power to interfere with such boards in the exercise of that discretion unless there is a clear abuse of it and the burden is upon those charging such an abuse to prove it by clear and convincing evidence.

The Teacher Fair Dismissal Act (Ark. Stat. Ann. § 80-1264 et seq., Repl. 1980)[1] provides that a teaching contract may be nonrenewed for *any reason*, so long as it is not arbitrary, capricious or discriminatory. By including the word "any" the legislature emphasized its intention not to invade the "broad discretion" of school boards in deciding which teachers should be retained, except where the nonrenewal is arbitrary, capricious or discriminatory. Ark. Stat. Ann. § 80-1264.9(b) reads in part:

> Any certified teacher . . . may be terminated or the board may refuse to renew the contract of such teacher for *any*

---

[1] These proceedings occurred prior to the effective date of the Teacher Fair Dismissal Act of 1983.

*cause* which is not arbitrary, capricious, or discriminatory . . . (My italics).

We have interpreted that provision to mean the board's action will not be reversed if "any rational basis" exists for nonrenewal, *Lamar School District No. 39* v. *Kindy*, 278 Ark. 11, 642 S.W.2d 885 (1982), and the board's discretion was not abused. "Since this determination not to renew the appellant's contract was a matter within the discretion of the school board, the reviewing court could not substitute its opinion for that of the Board in the absence of an abuse of discretion by the Board." *Chapman* v. *Hamburg Public Schools*, 274 Ark. 391, 625 S.W.2d 477 (1981).

There is substantial evidence in this record for Mrs. McMahan's nonrenewal by the Leola School Board. Mrs. McMahan's performance over a period of time was shown to be deficient in her relations with some parents and children. Her classes (first and second grade pupils) were divided into fast learners and slow learners, that the slow learners were ridiculed by the other students. One parent, on receiving her child's report card, was told by Mrs. McMahan, "The next one will be worse." There was evidence that some children were afraid of her, that she yelled at them, that she harassed and picked on some. Much of the proof centered on one pupil, Chad Williams, whose difficulties with Mrs. McMahan were the cause, at least as his parents saw it, of nervousness, bed-wetting and vomiting. On several occasions he wet his pants in the schoolroom, once after a request to go to the restroom had been refused. He was made to wipe up the floor in front of the other children. Mrs. Williams said that Mrs. McMahan's reaction to her concerns on her son's behalf was to refuse to speak to her when they met in public. There was other proof of a similar vein, including testimony that Mrs. McMahan questioned children indiscreetly about "problems at home."

It must be said in fairness there was much offsetting proof, there were parents who praised Mrs. McMahan, and Mrs. McMahan offered a number of letters from devoted children. But those conflicts were for the school board to weigh and resolve. Once particularly unfavorable incident is virtually undisputed and would provide in and of itself a basis for nonrenewal. Mr. Pharr and Mrs. Williams described the event: Mrs. McMahan

was unwilling to meet with Mrs. Williams without a witness present. She chose Mrs. Dennis, another teacher. When Mrs. Dennis interjected her own opinions concerning Chad, the three women consulted Mr. Pharr, the superintendent. His attempts to mediate were frustrated by what he described as insubordinate conduct by Mrs. McMahan to the extent that the meeting was disrupted. Finally, he asked Mrs. Williams and Mrs. McMahan to step outside while he spoke with Mrs. Dennis. He said after they went out Mrs. Williams came to the door and called him and Mrs. McMahan was lying on the floor outside the conference room "hollering and screaming." He said the incident disturbed other classes.

Mrs. Williams' description corroborated Mr. Pharr's. She said when she and Mrs. McMahan stepped outside, Mrs. McMahan listened at the door a few minutes and then lay down on the floor and "began screaming and hollering." Mrs. McMahan's explanation was that she had been under stress and had fainted, though how that explains the alleged screaming, is not clear. There was some suggestion that the onset was due to muscle spasms of her back, yet there was testimony that she was back at school that afternoon. Whether this bizarre scene was explainable in terms of a physical or an emotional cause, and to what extent it reflected on Mrs. McMahan's competence, was for the school board to decide.

The circuit judge virtually ignored the foregoing evidence, and looked instead to matters that were collateral to the issue of whether there was "any cause" to nonrenew Mrs. McMahan's contract. The fact that Mr. Pharr may have been ambivalent is entirely beside the point, as it is the school board's responsibility to decide on renewal. Nor is the fact that the school board would not hear Mrs. McMahan's supporters at the May 6 meeting of any relevance. The open meeting was held on May 18 and Mrs. McMahan was permitted to offer whatever she chose at the meeting. The board was not required to hold two open meetings on the issue. Lastly, the finding that 1976 charges were the basis for the current nonrenewal was clearly erroneous. Certainly the board had the right to discuss earlier problems. Had the board relied on outdated charges alone, such a finding would be appropriate, but the fact is there was ample evidence of recent origin to sustain the board's action.

I believe we should adhere to our many cases that say the courts will not invade the province of the school board in the exercise of its authority. *Chapman* v. *Hamburg Public Schools, supra.*

HICKMAN, J., joins in this dissent.