858 F.2d 1317
 49 Ed. Law Rep. 513
 Charlotte THOMPKINS and Ida Walker, Appellant,
v.
STUTTGART SCHOOL DISTRICT # 22; Ken Alderson, Supt. of the
Stuttgart School District; Mary Stone; Thomas Hill; James
Mason; Charles E. Smith; Garland Hayes; Norris Ragan;
Charles Day, In Their Official Capacities as Members of the
Board of Education in the Stuttgart School District, Appellees.
 No. 87-1500.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 18, 1988.
Decided Oct. 6, 1988.
Rehearing and Rehearing En Banc Denied Dec. 13, 1988.
 
 Lazar M. Palnick, Little Rock, Ark., for appellant.
 Christopher Heller, Little Rock, Ark., for appellees.
 Before HEANEY and JOHN R. GIBSON, Circuit Judges, and HENLEY, Senior Circuit Judge.
 JOHN R. GIBSON, Circuit Judge.
 
 
 1
 Ida Walker, formerly a teacher in the Stuttgart, Arkansas schools, appeals the judgment of the district court[1] denying her claim for reinstatement, back pay and other benefits under the Arkansas Teacher Fair Dismissal Act of 1979, Ark.Stat.Ann. Secs. 80-1264 to -1264.10 (1980 replacement) (repealed 1983). Walker was given written notice on April 15, 1981 that her contract would not be renewed for the following year, and requested and received an adversarial hearing before the school board on July 7, which resulted in the board's decision not to offer Walker a new contract. The district court concluded that the board had substantially complied with the termination provisions of the Act, and that Walker was not entitled to any relief. Walker argues on appeal that the district court erred in concluding that her employment was properly terminated and in denying her relief. We affirm the judgment of the district court.
 
 
 2
 Walker began teaching in the Stuttgart schools in 1959, and in 1970 she took a position at the Shannon Elementary School. Walker's supervising principal expressed concerns about Walker's job performance on several occasions during the 1978-79 and 1979-80 school years. At a school board meeting in May 1980, the principal recommended that Walker's contract not be renewed. The board granted Walker a hearing on the matter and voted to offer her a one-year extension, conditioned on her efforts to improve performance in nine specified areas. Walker was reassigned to the Northside Elementary School. After the principal of that school reported his concerns about Walker's teaching in February 1981, Walker was again transferred. Shortly thereafter, on April 14, 1981, the board voted not to renew Walker's contract for the 1981-82 school year, and the letter notifying her of this decision also stated that she could request a hearing. At Walker's request, a hearing was conducted on July 7, and the board again voted not to offer her a new contract. On July 15, 1981, the board sent Walker a second letter notifying her of this decision.
 
 
 3
 Walker filed this action, raising discrimination claims under federal law and this claim under the Fair Dismissal Act. The district court rejected the federal claims, and Walker did not appeal this ruling. In Thompkins v. Stuttgart School Dist., 787 F.2d 439 (8th Cir.1986), we reversed the district court's decision not to consider the pendent state claim, and this was the only claim involved in the trial now before us.
 
 
 4
 The district court first determined that the actions of the school board in April were not in substantial compliance with the nonrenewal provisions of the Fair Dismissal Act; that Walker's contract was automatically renewed; and that she had a valid contract at the time of the July hearing. See Ark.Stat.Ann. Sec. 80-1264.3. Stuttgart does not contest these rulings on appeal.
 
 
 5
 The court then determined that the board's actions following the April 14 decision were in substantial compliance with the termination provisions of the Act. The court examined with care the language of the Act and two recent decisions of the Arkansas Supreme Court, Lee v. Big Flat Public Schools, 280 Ark. 377, 658 S.W.2d 389 (1983), and Green Forest Public Schools v. Herrington, 287 Ark. 43, 696 S.W.2d 714 (1985). The court first ruled that the superintendent's April 15 letter constituted effective notice of his recommendation that Walker be terminated, although the letter termed the action nonrenewal and contained no itemization of the grounds for the action. The court reasoned that the content and breadth of the July hearing made this clear. The court examined the hearing transcript in detail and found that Walker was aware before the hearing commenced of the charges against her and the school board's concerns, and that she dealt directly with these matters through her own testimony and the cross-examination of witnesses. The court concluded that Walker was not prejudiced by the defects in the written notice, and therefore construed the July proceedings to be for termination rather than nonrenewal.
 
 
 6
 The court then found that Walker was afforded a full adversarial hearing before the board in July, and concluded that the board's decision following the hearing, although labeled a nonrenewal, was in fact a permissible termination under the Act. The court rejected Walker's argument that the board's action was merely a formal ratification of its earlier decision, finding nothing to indicate that the board had prejudged Walker's case or denied her a fair and open chance to preserve her job. The court also rejected Walker's argument that the invalid April decision precluded the board from reconsidering the matter for another year, or until the next opportunity for nonrenewal arose. The statute provides for termination "during the term of any contract period for any cause which is not arbitrary, capricious or discriminatory." Ark.Stat.Ann. Sec. 80-1264.4. See also Ark.Stat.Ann. Sec. 80-1264.9(b). The court concluded that the board had voted to terminate Walker's employment on the basis of the lawful cause shown by Walker's supervising principals at the July hearing.[2]
 
 
 7
 Finally, the court recognized that because Walker's contract was effectively renewed in April, she was entitled to all benefits for the 1981-82 contract year accruing before her termination. The parties filed affidavits indicating that Walker had received her final pay check for the 1980-81 year, issued on July 31, 1981. As Walker's employment was terminated before that date, she was not entitled to receive any pay for the period beginning in August 1981, and thus was entitled to no damages.
 
 
 8
 Walker argues that there is a significant distinction in the Arkansas Teacher Fair Dismissal Act between termination and nonrenewal; that the cause shown to the board was not sufficient for termination, but only nonrenewal; and that the board did not follow proper procedures for the termination in July. She further argues that because her employment was not properly terminated, she is entitled to all of the relief she would have received upon renewal, including reinstatement, back pay, and other benefits provided under the Act.
 
 
 9
 Different versions of the Arkansas Teacher Fair Dismissal Act have been before this court on numerous occasions. In Rogers v. Masem, 788 F.2d 1288, 1293 (8th Cir.1985), we recognized that the 1979 Act which applies here provides significantly different procedures for the nonrenewal and termination of probationary teachers--those teachers who have not completed three successive years of employment in the school district. In contrast, for non-probationary teachers like Walker, the nonrenewal and termination procedures of the 1979 Act are virtually identical, as the district court recognized. Both require notice of the school superintendent's recommendation, including a statement of the grounds relied upon, and a hearing must be provided upon the teacher's written request. Ark.Stat.Ann. Secs. 80-1264.3, .4, .8.[3] The grounds for nonrenewal and termination are also the same; in each case, a non-probationary teacher may be discharged "for any cause which is not arbitrary, capricious, or discriminatory, or for violating the reasonable rules and regulations promulgated by the school board." Ark.Stat.Ann. Sec. 80-1264.9(b). See also Ark.Stat.Ann. Sec. 80-1264.4.
 
 
 10
 In dealing with questions of state law we give great weight to the decisions of an experienced district judge. Kansas State Bank v. Citizens Bank, 737 F.2d 1490, 1496 (8th Cir.1984). Here the district court was faced with analysis of a factual situation which from beginning to end failed to comply strictly with statutory requirements, and it was required to reconcile the seemingly conflicting decisions of the Arkansas courts in Green Forest and BigFlat. Both involved board action before a nonprobationary teacher was notified that the contract would not be renewed. Big Flat found substantial compliance with the notice requirement and, as Judge Eisele observed, placed stress on oral and written communications from the superintendent to the aggrieved teacher, which were not present in Green Forest. Green Forest, Judge Eisele recognized, clearly held that, in addition to proper notice, the sequential order of the decision and hearing were critical, and as the decision to nonrenew the teacher was made before the board conducted the hearing, there was no substantial compliance with the Act. Judge Eisele noted that Big Flat was a split decision and Green Forest the more recent, and concluded that he should follow Green Forest over the more lax standard indicated in Big Flat. Accordingly, he held that the Stuttgart board had violated the Act by its April 14, 1981 decision to not renew plaintiff's contract.
 
 
 11
 Walker argues that under our decisions in Rogers, 788 F.2d at 1294-95, and Hilton v. Pine Bluff Pub. Schools, 796 F.2d 230, 232 (8th Cir.1986), and decisions of the Arkansas courts, termination requires more serious cause than nonrenewal, and "strict" rather than "substantial" compliance with the statute's procedural requirements. These two specific points form the basis for her arguments that the cause shown to the board was not sufficient for termination, and that the district court erred in considering the July hearing as one for termination, because it found only substantial compliance with the applicable notice provision, Ark.Stat.Ann. Sec. 80-1264.4.
 
 
 12
 In support of her argument that termination requires more serious cause than nonrenewal, Walker relies primarily on section 80-1264.5 of the Fair Dismissal Act; two decisions of the Arkansas Supreme Court, Turney v. Alread Pub. Schools, 282 Ark. 84, 666 S.W.2d 687 (1984), and Moffitt v. Batesville School Dist., 278 Ark. 77, 643 S.W.2d 557 (1982); and the decisions of this court in Rogers, 788 F.2d at 1293, and Hilton, 796 F.2d at 232. We see nothing in these authorities which mandates reversal of the district court's ruling. Section 80-1264.5 provides a special procedure for suspension of a teacher without notice or hearing when "immediate suspension * * * is necessary in the best interest of the district * * *." This was not the procedure followed by the school board in July, as the factual findings of the district court make clear. Moreover, the Arkansas cases confirm that a non-probationary teacher may be terminated "for any cause which is not arbitrary, capricious, or discriminatory * * *," Turney, 282 Ark. at 86, 666 S.W.2d at 689; Moffitt, 278 Ark. at 78, 643 S.W.2d at 560, and this is the standard which the district court applied in finding that Walker was terminated on the basis of lawful cause. Finally, our decisions in Rogers and Hilton are not to the contrary. In Rogers we dealt with a probationary teacher who was subject to nonrenewal without cause under the 1979 version of the Fair Dismissal Act. 788 F.2d at 1293. See also Ark.Stat.Ann. Sec. 80-1264.3 (1980 replacement). Similarly, in Hilton we dealt with the 1983 version of the Fair Dismissal Act, which provides for the nonrenewal of all teachers, whether probationary or non-probationary, without cause. 796 F.2d at 233. See also Ark.Stat.Ann. Sec. 1266.3 (Supp.1985). In this case, by contrast, cause was required for either termination or nonrenewal, and as the district court recognized, for a non-probationary teacher like Walker the grounds for discharge under either procedure are the same. Ark.Stat.Ann. Secs. 80-1264.4, .9(b). We are satisfied that the district court did not err in finding that Walker was terminated on the basis of lawful cause.
 
 
 13
 For her argument that termination requires strict rather than substantial compliance with the statute's procedural provisions, Walker relies primarily on this court's decision in Rogers. There we ruled that the clear language of a notice of recommended termination could not be ignored with respect to a probationary teacher whom the school board sought to dismiss without a pre-termination hearing. 788 F.2d at 1293-94. We reversed a district court's determination that the proceeding was actually one for nonrenewal, relying on the clear distinction between nonrenewal and termination for probationary teachers under the 1979 Act. Id. at 1294. We noted that the school board had failed to achieve substantial, much less actual, compliance with the statute's hearing requirement, resulting in prejudice to the teacher's position. Id. at 1294 & n. 5. In Rogers we recognized, as the district court recognized here, that substantial compliance with the statute's provisions is ordinarily sufficient, absent a showing that prejudice resulted from a want of strict compliance. Id.; Big Flat, 280 Ark. at 378, 658 S.W.2d at 390; Fullerton v. Southside School Dist., 272 Ark. 288, 290-91, 613 S.W.2d 827, 829 (1981). As we have seen, the notice and hearing requirements for the termination and nonrenewal of non-probationary teachers like Walker under the 1979 Act are identical in all respects material to this case. Accordingly, we cannot say the district court erred in finding that Walker was not prejudiced by the "semantical imprecision" of the school board in its April 15 notice, and that substantial compliance with the statutory requirements was sufficient.
 
 
 14
 Finally, the district court properly held that while Walker was entitled to compensation through July 1981, she was fully paid during this period and accordingly suffered no loss.
 
 
 15
 The district court did not err in treating the July proceeding as one for termination and in finding substantial compliance with the statute's procedural requirements. The judgment of the district court is affirmed.
 
 
 16
 HEANEY, Circuit Judge.
 
 
 17
 I respectfully dissent.
 
 
 18
 The majority has effectively rewritten the Arkansas Teachers Fair Dismissal Act of 1979 (Act) to take from non-probationary teachers the right to have their contracts renewed unless the Board of Education gives them a notice of nonrenewal within the period of the contract, or within ten days after the end of the school year. As a result of this creative reading, every Board of Education in the state may take the liberty of ignoring the nonrenewal provisions of the Act and could give a teacher notice of termination long after the school year has ended, even though the cause for termination is one that arises during the school year. This utterly destroys the balance that the Arkansas State Legislature sought to create in the Act, and will demoralize teachers at a time when extensive efforts are being made to improve the quality of education in the state.
 
 
 19
 The 1979 Act is not a teacher tenure law. It does, however, extend significant protection to a teacher who has completed three successive years of employment in the school district in which the teacher is currently employed. It provides as follows:
 
 
 20
 80-1264.3. Notice of nonrenewal required.--Every contract of employment hereafter made between a teacher and the board of directors of a school district shall be renewed in writing on the same terms and the same salary, unless increased or decreased by law, for the next school year * * * unless [during the period of such contract or within ten (10) days after the termination of said school term] the teacher is notified by the school superintendent that the superintendent is recommending that the teacher's contract not be renewed * * * A teacher who has completed three (3) successive years of employment in the school district in which the teacher is employed on the effective date of this Act is deemed to have completed the required probationary period. The notice of recommended nonrenewal of a teacher who has completed a probationary period of employment shall include a statement of the grounds for such recommendation.
 
 
 21
 * * *
 
 
 22
 * * *
 
 
 23
 80.1264.8. Request for Hearing--Hearing procedure.--* * * [A] teacher who has completed three (3) successive years of employment in the district who receives a notice of recommended nonrenewal may file a written request with the school board of the district for a hearing. Such written request for a hearing shall be sent by certified or registered mail to the president of the school board, with a copy to the superintendent, or may be delivered in person to each of them by such teacher, within thirty (30) days after the written notice of proposed termination or nonrenewal is received by the teacher. Upon receipt of such request for a hearing, the board shall grant a hearing in accordance with the following provisions:
 
 
 24
 (a) The hearing shall take place not less than five (5) nor more than ten (10) days after the written request therefor has been served on the board, except that the teacher and the board may, in writing, agree to a postponement of the hearing to a later date.
 
 
 25
 * * *
 
 
 26
 * * *
 
 
 27
 (b) Any certified teacher who has been employed continuously by the school district [for] three (3) or more years may be terminated or the board may refuse to renew the contract of such teacher for any cause which is not arbitrary, capricious, or discriminatory, or for violating the reasonable rules and regulations promulgated by the school board.
 
 
 28
 Ark.Stat.Ann. Secs. 80-1264.3-4.9 (1980) (repealed 1983) (emphasis added).
 
 
 29
 Obviously, the Legislature intended the termination sections of the law to serve a purpose different than the sections dealing with nonrenewal, or it would not have created two separate and distinct procedures. Cf. Hilton v. Pine Bluff Public Schools, 796 F.2d 230, 233 n. 4 (8th Cir.1986) (Nonrenewal is a decision not to rehire for the coming year; termination is a discharge during the life of the contract). The purpose of the nonrenewal section of the Act is to give teachers who are not going to be rehired a reasonable opportunity to look for an alternative teaching assignment. At the same time, a school district retains the right to terminate a teacher at any time for any cause which is not arbitrary, capricious or discriminatory. Ark.Stat.Ann. Sec. 80-1264.4, supra. This Court has acknowledged this difference in Pine Bluff, supra at 232-34 (termination implicated constitutionally protected property interests), and in Rogers v. Masem, 788 F.2d 1288, 1293-94 (8th Cir.1985).
 
 
 30
 The Arkansas courts have also recognized this dicotomy. While substantial compliance is usually all that is required in either a nonrenewal or a termination case, Lee v. Big Flat Public Schools, 280 Ark. 377, 658 S.W.2d 389 (1983), what constitutes substantial compliance is dependent on which type of action is being taken. Thus, if a school district decides not to renew a teacher's contract, it must give the notice of nonrenewal within the time periods and according to the procedures required by the statute for the Arkansas Legislature has determined for us what constitutes adequate notice. It is not for us to sweep up behind the school board declaring "well, that's good enough." If the district fails to follow the law, then the teacher is entitled to relief.
 
 
 31
 In the present case the defendant school board voted not to renew plaintiff's contract on April 14, 1981. Plaintiff did not receive notice until May 21, 1981. She exercised her right to a hearing which was held on July 7, 1981. On July 15, the school board mailed a letter to the plaintiff notifying her that she would not be offered a teaching contract for the coming year.
 
 
 32
 The conduct of the school board is unacceptable. The Act required the school board to afford a teacher a hearing as soon as five days but not more than ten days after the superintendent recommends to the school board that they consider the teacher's performance, all this must occur before a decision is reached. The notice must include a statement of the grounds for nonrenewal. Here, plaintiff received no notice of the superintendent's recommendation. She was given a hearing twelve weeks after the board's decision, and likely was not notified of the school board's decision until late in the summer recess. She was denied meaningful participation. Though defendant argued that the April decision was tentative and the July decision determinative, on the facts the district court rejected this claim.
 
 
 33
 In Lee v. Big Flat Public Schools, supra, the question was whether the school district had given Mrs. Lee, a non-probationary teacher, a notice during the school year that her contract as a teacher in the school district would not be renewed. The Court held (with three judges dissenting) that the district court's finding that an adequate notice had been sent during the school year was not clearly erroneous. It pointed to the following facts to support its holding: (1) She had been informed in writing in April of 1981 that there would not be a remedial reading program in the 1982-83 school year; (2) during the 1981-82 school year she applied to other schools for a job and had several discussions with the school superintendent centering on the fact that she would not be re-employed the next year; (3) her contract was not renewed at the March, 1982, meeting of the school board; and (4) on April 5, 1982, the superintendent wrote the following letter at Mrs. Lee's request:
 
 
 34
 April 5, 1962.
 
 To Whom It May Concern:
 
 35
 Hazel Lee has been employed by the Big Flat School District # 32 for a period of eleven (11) years. During most of this time she has taught Title I Reading to the students who were below grade level.
 
 
 36
 Mrs. Lee would have been re-employed by the Big Flat School District if federal funds would have permitted.
 
 
 37
 I would recommend Mrs. Lee for a position in elementary school and federal programs where students are placed.
 
 
 38
 Donald G. Lee, Superintendent.
 
 
 39
 Id., 658 S.W.2d at 391.
 
 
 40
 This letter, the Court said, was in writing, signed by the school superintendent, and was within the time fixed by statute. The Court then found substantial compliance with the nonrenewal provisions of the statute--a holding with which I have no disagreement. In the present case, however, under Arkansas law there is not substantial compliance with the nonrenewal provisions of the law. We have no business saying that the discharge can nonetheless be sustained under the termination provisions of the 1979 Act.
 
 
 41
 In Green Forest Public Schools v. Herrington, 287 Ark. 43, 696 S.W.2d 714 (1985), the Court refused to extend the doctrine of substantial compliance to a situation in which the school district determined that it would not renew a teacher's contract before it notified the teacher of its intent not to renew. The Court stated:
 
 
 42
 This Court has held that pursuant to the Teacher Fair Dismissal Act of 1979, "a nonprobationary teacher was entitled to a statement of the reasons for a proposed non-renewal and to a hearing before the board reached its decision not to renew.
 
 
 43
 Because the hearing over appellee's non-renewal was conducted after the decision had been made, the board failed to substantially comply with the requirements of Sec. 80.1264.3. The trial court's conclusion therefore was correct.
 
 
 44
 Id., 696 S.W.2d at 717 (emphasis included, citations omitted).
 
 
 45
 The Court ordered the teacher reinstated and required that he be given an award of back pay.
 
 
 46
 In my view, this case is controlling. Indeed, the Court below recognized its binding effect, but then decided to consider plaintiff's case as one of termination rather than one of nonrenewal even though the school district specifically stated that it was proceeding under the nonrenewal provisions of the law.[1]
 
 
 47
 In affirming, the majority relies heavily on a doctrine of this Court which gives great weight to the decisions of the district court in interpreting the law of the state in which the district judge sits. I have no quarrel with this doctrine; indeed, it is a healthy one. It cannot, however, relieve us of our duty to investigate the law especially where the district court's ruling contradicts the plain language of a state act.[2]
 
 
 48
 The district court was evidently reluctant to require the School District to re-employ a teacher that the court felt was incompetent for an additional year. I sympathize with the court's dilemma, but reinstatement is not a mandatory remedy. The Arkansas Supreme Court has indicated that it is proper in some instances to grant the teacher a year's pay in lieu of reinstatement. Maxwell v. Southside School District, 273 Ark. 89, 618 S.W.2d 148, 150 (1981). Further, the Arkansas Supreme Court has recognized that damages may be mitigated by earnings of the teacher during that year. Id.
 
 
 49
 The appellant argues that there must be greater cause for terminating a non-probationary teacher than for refusing to renew a teacher's contract. That may be the case, but whether it is or not is not determinative of this appeal. Here, we have a situation in which the Board determined that it would not renew appellant's contract for the 1981-82 school year but failed to follow the notice and procedural provisions of the 1979 Act in so doing.
 
 
 50
 I would reverse and remand to the district court with directions to that court to award the appellant damages equal to a year's salary, less any amounts that the teacher may have earned in other employment during the course of the year.
 
 
 
 [1]
 The Honorable G. Thomas Eisele, United States District Judge for the Eastern District of Arkansas
 
 
 [2]
 To the extent that the common law decision of Ottinger v. School Dist., 157 Ark. 82, 85, 247 S.W. 789, 790 (1923), cited by Walker, is inconsistent with this ruling, it must be considered overruled by more recent decisions under the Fair Dismissal Act allowing the termination or nonrenewal of non-probationary teachers on the basis of cause arising during earlier contract years. See Moffitt v. Batesville School Dist., 278 Ark. 77, 79-82, 643 S.W.2d 557, 558-60 (1982); Lamar School Dist. v. Kinder, 278 Ark. 1, 2-3, 642 S.W.2d 885, 886 (1982)
 
 
 [3]
 The procedures differ only in the matter of timing. Termination may occur "during the term of any contract period," Ark.Stat.Ann. Sec. 80-1264.4, whereas notice of nonrenewal must be provided within the period of the existing contract or within ten days after the end of the school term, Ark.Stat.Ann. Secs. 80-1264.3, -1304(b). The parties do not raise any issues regarding the timing of the notice and hearing provided to Walker, however
 
 
 [1]
 In Moffitt v. Batesville School Dist., 278 Ark. 77, 643 S.W.2d 557 (1982), the Supreme Court of Arkansas was confronted with a situation in which the contract of a non-probationary teacher was renewed. Thereafter, the teacher violated two clear rules of the district by destroying students' exams and by failing to account in a timely manner for lost or damaged books of which there were an astounding number. She was then given a notice of termination and was provided a hearing. Her termination was sustained by the Arkansas Supreme Court. Here, not only did the school district state that it was proceeding under the termination provisions of the law, but afforded the plaintiff all the notice and process the Arkansas Legislature felt was due for a terminated teacher. Moreover, the notice was timely before the last date on which a nonrenewal notice could have been given
 
 
 [2]
 At an earlier time, this Court took the view that in cases where a district judge had interpreted state law, the question on appeal was not whether the trial court had reached a correct conclusion, but whether it had reached a permissible one. Homolla v. Gluck, 248 F.2d 731, 734 (8th Cir.1957). We restated this rule in H.K. Porter Company, Inc. v. Wire Rope Corporation of America, Inc., 367 F.2d 653, 662, 663 (8th Cir.1966). In Luke v. American Family Mutual Insurance Company, 476 F.2d 1015, 1019 n. 6 (8th Cir.1973), however, this Court sitting en banc recognized that the legal effect of this principle on questions of first impression was to preclude appellate considerations of issues involving a significant question of law. We then adopted the position expressed by a majority of circuits and held that in the future we would give great weight to the view of the state law taken by the judge experienced in the law of that state. Our adherence to that standard was most recently expressed in Freeze v. American Home Products, Inc., 839 F.2d 415 (8th Cir.1988). My concern is that the majority while giving lip service to that standard, here, in effect, is going back to the standard rejected by this Court en banc in Luke