The Honorable Tommy E. Mitchum State Representative P.O. Box 2082 Batesville, AR 72501
Dear Representative Mitchum:
This is in response to your request for an opinion on thirteen questions regarding teachers' salary schedules and school district personnel policies. Your questions will be restated and addressed in the order posed.
Your first question is:
 (1) Does A.C.A. § 6-18-201 mean that the teacher salary schedule is a personnel policy? (Also see Act 170 of 1991, § 1).
In light of this question and the remainder of your questions, it appears to me that you intended to refer to A.C.A. § 6-17-201
(Cum. Supp. 1991), rather than § 6-18-201. Assuming that to be true, it is my opinion that § 6-17-201 contemplates teacher salary schedules being treated as personnel policies of the school districts. Section 6-17-201 provides:
 (a) Each school district in the state shall have a set of written personnel policies, including the teacher salary schedule.
 (b)(1) No school district shall receive in any year any funds from the Public School Fund until such district has filed its current personnel policies including any salary schedules, as required by this subchapter, signed by the president of the board.
 (2) The policy and schedules shall be filed with the Department of Education.
 (c) The Department of Education shall notify any district which has not filed such policies thirty (30) days before the first scheduled payment of the fiscal year.
In my opinion, the language of § 6-17-201 indicates that the teacher salary schedule is considered part of the written personnel policies of a school district. See alsoHelena-West Helena School Dist. #2 v. Randall, 32 Ark. App. 50,796 S.W.2d 586 (1990), wherein the Arkansas Court of Appeals reached the same conclusion.
Your second question is:
 (2) Does A.C.A. § 6-17-205 mean that, as far as the presentation of new personnel policy proposals or amendments to existing policies, a salary schedule proposal should be treated by the board of directors and the personnel policies committee the same as other personnel policy proposals?
In my opinion, the answer to this question is "yes." Because teacher salary schedules are considered part of a school district's written personnel policies, see § 6-17-201 andHelena-West Helena School Dist. #2 v. Randall, supra, it is my opinion that the presentation of a salary schedule proposal or proposed amendment to an existing schedule should be treated by the board of directors and the personnel policies committee in the same manner that other personnel policy proposals are treated.
Your third question is:
 (3) Does § 6-17-202 mean that in those school districts in Arkansas where collective bargaining rights are not recognized the personnel policies committee is used to propose new personnel policies or to propose amendments to existing personnel policies, including teacher salary schedules?
Arkansas Code Annotated § 6-17-202 provides:
 The provisions of this subchapter shall not apply in any district which chooses to officially recognize in its policies an organization representing the majority of the teachers of the district for the purpose of negotiating personnel policies, salaries, and educational matters of mutual concern under a written policy agreement.
Section 6-17-202 provides only that the requirements of §§6-17-201 to -208 (Cum. Supp. 1991) shall not apply to school districts that have chosen to officially recognize an organization representing the majority of the teachers in the district for purposes of negotiating the matters discussed therein; thus, it cannot be said to provide that in the remaining school districts, the personnel policies committee is used to propose new personnel policies or amendments to existing personnel policies. Nevertheless, § 6-17-205(c) provides that either the personnel policies committee or the board of directors may propose new personnel policies or amendments to existing policies, provided that the proposals of the board have been submitted to the committee at least five (5) working days prior to presentation to the board. As this provision is applicable only to school districts that do not recognize a collective bargaining organization, it appears that in school districts that do not utilize collective bargaining, both the personnel policies committee and the board of directors are used to propose new personnel policies or amendments to existing personnel policies.
Your fourth question is:
 (4) Does § 6-17-204 (Act 224 of 1983) mean that an amendment to a teacher's contract during the school year is an amendment to the district's personnel policies?
Arkansas Code Annotated § 6-17-204 provides:
 (a) The personnel policies of each school district in effect at the time a teacher's contract is entered into or renewed shall be considered to be incorporated as terms of the contract and shall be binding upon both parties unless changed by mutual consent.
 (b) Any amendments to personnel policies adopted during the term of such contract shall become effective the following July 1. However, these amendments may take place immediately with mutual consent.
Under this provision, the personnel policies of a school district become part of a teacher's contract. See Murray v.Altheimer-Sherrill Public Schools, 294 Ark. 403, 743 S.W.2d 789
(1988). Because amendments to personnel policies would thus amend the teacher's contracts too, such amendments don't take effect until the renewal of contracts on July 1 of the following year, unless there is a mutual consent that they take place immediately. In my opinion, this provision cannot be construed to mean that the amendment of an individual teacher's contract during the school year is necessarily an amendment to the school district's personnel policies.
Your fifth question is:
 Does the type of salary schedule proposed and/or adopted by the board of directors make any difference in the interpretation of A.C.A. § 6-17-205, that is the proposal must be submitted to the personnel policies committee at least five (5) working days prior to presentation to the board?
Because § 6-17-205 does not distinguish between types of proposed personnel policies in requiring that proposals by the board of directors be submitted to the personnel policies committee at least five (5) working days prior to presentation to the board, it is my opinion that the type of salary schedule proposed and/or adopted by the board of directors does not affect the interpretation and/or application of this requirement.
Your sixth question is:
 (6) Does the law allow, according to A.C.A. § 6-17-205(c), either the personnel policies committee or the board of directors to propose new personnel policies or amendments to existing policies?
As noted above in response to your third question, § 6-17-205(c) provides that either the personnel policies committee or the board of directors may propose new personnel policies or amendments to existing policies, so long as the proposals by the board have been submitted to the personnel policies committee at least five working days prior to their presentation to the board.
Your seventh question is:
 (7) Does A.C.A. § 6-17-205(d) guarantee the personnel policies committee the right to present its proposals for new policies or amendments to existing policies, which include salary schedule proposals, to the board of directors?
Section 6-17-205(d) provides:
 The committee will present its proposed policies or amendments to existing policies to the board of directors.
In my opinion, when read together with the rest of § 6-17-205, this section indicates that the personnel policies committee has a right to present its proposals for new personnel policies or amendments to existing policies, including salary schedule proposals, to the board of directors. This does not mean, of course, that the board of directors has to adopt the committee's proposals.
Your eighth question is:
 (8) How soon may the board of directors take final action on any new personnel policy or an amendment to an existing policy?
Under A.C.A. § 6-17-205(e), the board of directors may take final action on a proposal at the next regular board meeting after the proposal is presented to it.
Your ninth question is:
 (9) Can the superintendent of a school district propose a salary schedule to the board of directors and the board of directors then adopt that salary schedule without the board first having submitted it to the personnel policies committee?
In my opinion, the answer to this question is "no." The only entities authorized to present proposed personnel policies, including teacher salary schedules, to the board of directors is the personnel policies committee and the board of directors itself. See A.C.A. § 6-17-205(c) (Cum. Supp. 1991). While the superintendent presumably could propose a salary schedule to the board, and the board could adopt the proposal as its own, §6-17-205(c) would require the board to first submit the proposal to the personnel policies committee at least five working days prior to its presentation to the board.
Your tenth question is:
 (10) Can the school district's superintendent propose a salary schedule to the personnel policies committee? If so, under what conditions?
Nothing in § 6-17-205 would appear to prohibit the superintendent from proposing a salary schedule to the personnel policies committee for its consideration as a possible proposal to the board of directors. As there is no specific authority for this action by the superintendent, however, no conditions have been imposed upon it. Presumably, such a proposal would be presented at a regular meeting of the committee, with the committee's permission. It should, of course, be noted that the committee would not be obligated in any way to adopt the proposal.
Your eleventh question is:
 Can the superintendent of a school district prevent the personnel policies committee from presenting a salary schedule proposal to the board of directors?
In my opinion, the answer to this question is "no." The law appears to contemplate the personnel policies committee deciding what proposals will be presented to the board of directors. Even if the superintendent is a member of the committee, he would appear to have no authority to prevent the committee from presenting a salary schedule proposal to the board if the rest of the committee wanted to do so.
Your twelfth question is:
 (12) Can the board of directors prevent the personnel policies committee from presenting a salary schedule proposal to the board of directors?
While it is my opinion that the board of directors may not prevent the personnel policies committee from presenting a salary schedule proposal to the board of directors, it must be noted that the board of directors has the authority to adopt, reject, amend, or refer back to the committee any proposed policies or amendments to existing policies submitted to it for consideration. See A.C.A. § 6-17-205(f) (Cum. Supp. 1991).
Finally, you have asked for my opinion on the meaning of Act 401 of 1991 with regard to the following question:
 Under what conditions may the 56% (growth) money be used to satisfy pay increases for experience (existing or otherwise) and additional hours or degrees under the district's salary schedule?
Section 9 of Act 401 amended A.C.A. § 6-20-319(4)(A) to provide as follows:
 Each district in the state shall pay its certified personnel an amount equal to at least seventy percent (70%) of its net current revenue. Not less than eighty percent (80%) of seventy percent (70%) of each school district's increase in net current revenue over the net current revenue received the previous school year less the total salary expenditure required to fund additional certified personnel added to the staff of the district in the school year shall be divided equally among the certified personnel positions existing in the district in that year unless the board of directors of the district and a majority of the teachers agree to a different distribution. The eighty percent (80%) of the seventy percent (70%) may be used to satisfy pay increases for experience and additional hours or degrees under the district's salary schedule if (1) the school board adopts the changes in the salary schedule for the next school year either ten (10) days before the last day of pupil attendance or before contracts are issued to teachers whichever occurs first in accordance with A.C.A. §§ 6-17-201, et seq. and distributes the eighty percent (80%) of the seventy percent (70%) equally among all certified personnel positions, or (2) the board and a majority of the teachers agree to an unequal distribution.
In an opinion issued by this office prior to the passage of Act 401 of 1991, it was concluded that the eighty percent of the seventy percent of the increase in net current revenue (56% of the increase in net current revenue) could not be used to satisfy pay increases for experience and additional hours or degrees mandated under the district's salary schedule. See Atty. Gen. Op. No. 90-128. In Act 401 of 1991, however, the legislature specifically authorized the use of this money for this purpose, under certain conditions as set out therein. In summary, 56% of the increase in net current revenue may apparently be used to satisfy pay increases for experience and additional hours or degrees under the district's salary schedule: (1) if the school board adopts the changes in the salary schedule for the next school year either ten days before the last day of pupil attendance or before contracts are issued to teachers, whichever occurs first, and distributes the money equally among all certified personnel positions, or (2) if the board and a majority of the teachers agree to an unequal distribution. Thus, the school board must find a basis for distributing the money equally among all teachers, or the board and a majority of the teachers must agree to an unequal distribution; otherwise, it may not be used to satisfy pay increases for experience and additional hours or degrees under the district's salary schedule.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Catherine Templeton.
Sincerely,
Winston Bryant Attorney General
CCT:WB/ch